**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice* forthcoming)
Glenn T. Graham (State Bar No. 338995)
Emily E. Clark (*pro hac vice* forthcoming)
One Jefferson Road
Parsippany, New Jersey 07054
Telephone:   (973) 503-5900
Facsimile:    (973) 503-5950
lmazzuchetti@kelleydrye.com
ggraham@kelleydrye.com
eclark@kelleydrye.com

*Attorneys for Defendant Sunrun Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY BANKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRUN INC.<br><br>Defendant. | Case No. 4:24-cv-07877-JST<br><br>**DEFENDANT SUNRUN INC.'S NOTICE OF MOTION AND MOTION TO STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[Proposed Order and Request for Judicial Notice filed concurrently herewith]**<br><br>Hon. Jon S. Tigar<br><br>Hearing Date: March 20, 2025<br>Time: 2:00 pm<br>Location: Zoom |

TO THE COURT, PLAINTIFF, AND HER COUNSEL:

PLEASE TAKE NOTICE that on March 20, 2025 at 2:00 pm, in the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Sunrun Inc. ("Sunrun") will and hereby does move the Court for an order dismissing and/or striking Plaintiff's class allegations (Count I) pursuant to Rules 12(f) and 23.

Sunrun moves to strike Plaintiff's class allegations because it is apparent that Plaintiff's proposed class fails to meet Rule 23's requirements of predominance and adequacy. Plaintiff's class allegations should be stricken for these reasons.

This Motion is based on this Notice and Motion, the attached memorandum, the accompanying request for judicial notice, all pleadings, records, and files in this action, and such evidence and argument as may be presented at or before the hearing on this Motion.

DATED: January 27, 2025             KELLEY DRYE & WARREN LLP


By: */s/ Glenn T. Graham*
    Glenn T. Graham
    Lauri A. Mazzuchetti (*pro hac vice* forthcoming)
    Emily E. Clark (*pro hac vice* forthcoming)
One Jefferson Road
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
ggraham@kelleydrye.com
eclark@kelleydrye.com


*Attorneys for Defendant Sunrun Inc.*

DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 1

    A. THE PARTIES ................................................................................................... 1

    B. PLAINTIFF'S ALLEGATIONS ........................................................................ 2

III. ARGUMENT .................................................................................................................. 3

    A. APPLICABLE LEGAL STANDARDS ............................................................. 3

    B. PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE EVIDENCE OF INDIVIDUAL ISSUES RELATING TO CONSENT, PERMISSION AND ESTABLISHED BUSINESS RELATIONSHIPS WILL PREDOMINATE ........................................................ 5

        1. Plaintiff's Proposed Classes Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement ........................................................................ 6

        2. Plaintiff Cannot Satisfy the Adequacy Requirement of Rule 23 Due to Counsel's Conflict of Interest ............................................................... 9

IV. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................................ 10

*Collins v. Gamestop Corp.*,
    No. 3:10-cv-1210, 2010 WL 3077671 (N.D. Cal. Aug. 6, 2010) .............................................. 4

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .................................................................................................................... 3

*Connelly v. Hilton Grand Vacations Co., LLC*,
    294 F.R.D. 574 (S.D. Cal. 2013) ............................................................................................... 8

*Dixon v. Monterey Financial Svs., Inc.*,
    No. 3:15-cv-03298, 2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) .......................................... 5

*Doninger v. Pac. Nw. Bell, Inc.*,
    564 F.2d 1304 (9th Cir. 1977) ................................................................................................... 4

*E&G, Inc. v. Mount Vernon Mills, Inc.*,
    No. 6:17-cv-318, 2019 WL 4034951 (D.S.C. Aug. 22, 2019) .................................................. 7

*Felix v. North American Asset Services, LLC*,
    No. 2:12-cv-3718, 2012 WL 12551406 (C.D. Cal. Sept. 5, 2012) ........................................... 6

*Gannon v. Network Tel. Svs., Inc.*,
    No. 2:12-cv-9777, 2013 WL 2450199 (C.D. Cal. June 5, 2013) .............................................. 4

*General Telephone Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) .................................................................................................................. 9

*Ginwright v. Exeter Fin. Corp.*,
    280 F. Supp. 3d 674 (D. Md. 2017) .......................................................................................... 7

*Herrera v. Cathay Pac. Airways Ltd.*,
    No. 20-cv-03019, 2021 WL 673448 (N.D. Cal. Feb. 21, 2021) ............................................... 4

*Hovsepian v. Apple, Inc.*,
    No. 5:08-cv-5788, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ............................................ 4

*J.T. v. City and Cnty. of San Francisco*,
    No. 23-cv-06524, 2024 WL 3013649 (N.D. Cal. June 13, 2024) ............................................. 4

*Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*,
 102 F.R.D. 183 (N.D. Ohio 1984) ............................................................................................. 11

*Jamison v. First Credit Servs., Inc.*,
 290 F.R.D. 92 (N.D. Ill. 2013) ..................................................................................................... 6

*Kayes v. Pac. Lumber Co.*,
 51 F.3d 1449 (9th Cir. 1995) ..................................................................................................... 11

*Krim v. pcOrder.com, Inc.*,
 210 F.R.D. 581 (W.D. Tex. 2002) ............................................................................................. 11

*Kuper v. Quantum Chemical Corp.*,
 145 F.R.D. 80 (S.D. Ohio 1992) ................................................................................................ 11

*Kurczi v. Eli Lilly & Co.*,
 160 F.R.D. 667 (N.D. Ohio 1995) ............................................................................................. 11

*Lee v. Loandepot.com, LLC*,
 No. 6:14-cv-1084, 2016 WL 4382786 (D. Kan. Aug. 17, 2016) ........................................... 6, 9

*Levitt v. Fax.com*,
 No. 1:05-cv-949, 2007 WL 3169078 (D. Md. May 25, 2007) .................................................... 7

*Lou v. Ma Laboratories, Inc.*,
 5:12-cv-05409, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014) ................................................. 10, 12

*Ortiz v. Firebroad Corp.*,
 527 U.S. 815 (1999) ............................................................................................................ 9, 10

*Pepka v. Kohl's Dep't Stores, Inc.*,
 No. 2:16-cv-4293, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) .............................................. 4

*Sanders v. Apple, Inc.*,
 672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................................................ 4

*Sidney-Vinstein v. A.H. Robins Co.*,
 697 F.2d 880 (9th Cir. 1983) ....................................................................................................... 4

*Sorsby v. TruGreen Ltd. P'ship*,
 No. 1:20-cv-2601, 2023 WL 130505 (N.D. Ill. Jan. 9, 2023) ..................................................... 7

*Stevens-Bratton v. TruGreen, Inc.*,
 437 F. Supp. 3d 648 (W.D. Tenn. Feb. 4, 2020) .................................................................... 6, 9

*Sullivan v. Chase Inv. Servs. of Bos., Inc.*,
 79 F.R.D. 246 (N.D. Cal. 1978) ................................................................................................ 11

*Vandervort v. Balboa Cap. Corp.*,
    287 F.R.D. 554 (C.D. Cal. 2012) ....................................................................................... 5

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ............................................................................................. 4

*Williams v. PillPack, LLC*,
    No. 3:19-cv-5282, 2021 WL 5113467 (W.D. Wash. Nov. 3, 2021) .................................. 4, 6

*Wolfkiel v. Intersections Ins. Servs. Inc.*,
    303 F.R.D. 287 (N.D. Ill. 2014) ......................................................................................... 8

**Statutes**

47 U.S.C. § 227 ................................................................................................................*passim*

**Court Rules**

Fed. R. Civ. P. 23 .............................................................................................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200 .........................................................................................................*passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Peggy Banks ("Plaintiff") brings this putative class action complaint (Dkt. No. 1) ("Complaint" or "Compl.") against Sunrun Inc. ("Sunrun"), alleging that Sunrun violated the "Do Not Call" ("DNC") provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). Plaintiff's claims are based upon alleged calls to a telephone number beginning with 909-XXX-XXXX (the "909 Number"). (Compl. ¶ 12.)

Plaintiff herself alleges that class treatment would only be appropriate for those persons that purportedly received *unsolicited* calls—i.e., those who did not provide the requisite permission to be contacted from Sunrun. But her proposed class includes persons who cannot possibly have a TCPA claim against Sunrun—such as Sunrun's existing customers, prospective customers, and others who consented to be called by Sunrun. None of these individuals have any possible claim against Sunrun. Thus, it is apparent from the face of the Complaint that Plaintiff's proposed class cannot possibly satisfy the requirements of Federal Rule of Civil Procedure 23 and this action is unsuitable for class treatment.

Additionally, Plaintiff's class claims must be dismissed as Plaintiff's counsel cannot adequately represent the class. Plaintiff's California-based counsel, Dana J. Oliver, has a clear conflict of interest because Mr. Oliver is simultaneously seeking to represent an overlapping purported putative class in a lawsuit captioned *Strickland v. Sunrun Inc.*, No 3:23-cv-05034-JD pending in this District. This conflict of interest disqualifies Mr. Oliver from representing the putative class in this case. Accordingly, Plaintiff's class allegations should be dismissed for this additional reason.

## II. FACTUAL BACKGROUND

### A. THE PARTIES

Plaintiff is an individual located in Norco, California. (Compl. ¶ 3.) Sunrun is a corporation organized and existing under the laws of the State of Delaware, and its headquarters are located in San Francisco, California. (*Id.* ¶ 4.) Sunrun sells solar power services, including goods and services related to solar energy. Sunrun's website is one of the avenues that Sunrun

uses to connect with consumers that are interested in solar energy solutions—providing consumers the option to directly provide their information to Sunrun to receive a personalized quote for solar solutions via a phone call or text message. (Request for Judicial Notice ("RJN"), Ex. A.) The Sunrun website provides a webform where consumers fill out specific fields, including their first name, last name, email, zip code and phone number. (*Id.*) They are also asked if they own their home or not. (*Id.*) When a consumer chooses to submit this form, then they give permission to be contacted by Sunrun via the telephone. The language on Sunrun's website states:

> [b]y clicking below, I authorize Sunrun to call me and send pre-recorded messages and text messages to me about Sunrun products and services at the telephone number I entered above, using an autodialer, even if I am on a national or state "Do Not Call" list. Message and data rates may apply. Maximum 10 texts per month. Consent for calls & texts is optional. You can opt out anytime. You also agree to our Terms of Service.

(*Id.*) Sunrun only has an interest in contacting consumers who are actually interested in the solar and energy solutions that it offers, and it endeavors to only call the same—as it would make no sense for the company to call those that are not ultimately interested in its services. (*Id.*) All consumers who complete this webform are requesting information about Sunrun's services and to be contacted by Sunrun.

### B.   PLAINTIFF'S ALLEGATIONS

On November 11, 2024, Plaintiff filed a one-count complaint alleging that Sunrun violated the DNC provisions of the TCPA, 47 U.S.C. § 227 *et seq.* (Compl. ¶ 43.) Plaintiff alleges that despite her registration of her phone number on the National Do Not Call Registry ("NDNCR"), she "received at least thirty-one telemarketing calls . . . between at least July 11, 2024 and August 16, 2024." (*Id.* ¶¶ 14–15.) Plaintiff claims that her phone number is a residential telephone line. (*Id.* ¶ 13.) Plaintiff further alleges that the purported calls were "nonconsensual encounters" and that the calls she received were "unsolicited." (*Id.* ¶¶ 22, 33.) She alleges that she "never requested the calls or provided her consent to receive them." (*Id.* ¶ 20.)

Plaintiff asserts that she was harmed by such purported calls because her privacy was violated and she was "annoyed and harassed." (*Id.* ¶ 23.) Further, Plaintiff claims that she was

"harmed by use of [her] telephone power, network bandwidth, storage space, wear and tear, and the intrusion on [her] telephone that occupied it from receiving legitimate communications." (*Id.*)

Based on the foregoing, Plaintiff proposes to represent the TCPA DNC Registry Class, defined as:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls [sic] from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

(*Id.* ¶ 24.) This class definition is almost identical to the class proposed in another lawsuit against Sunrun pending in this District captioned *Strickland v. Sunrun Inc.*, No 3:23-cv-05034-JD. That lawsuit alleges violations of the TCPA, and the Florida Telephone Solicitations Act against Sunrun. The *Strickland* lawsuit proposes a TCPA class defined as:

> All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls [sic] from or on behalf of Sunrun (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

(RJN Ex. B, ¶ 48.) Noticeably, the only difference between the *Strickland* proposed class and the proposed class in this case is the use of the word "residential" and the time period of the calls received by the classes, as *Strickland* was initiated on October 1, 2023, and this case was filed on November 11, 2024. The cases are strikingly similar in that they make (i) the same TCPA allegations, (ii) against the same defendant (Sunrun), (iii) with the same counsel, Mr. Oliver. (RJN Ex. B at 13; RJN Ex. C.) Mr. Oliver also purports to represent the class in *Strickland* as he does here. (*Id.*)

## III. ARGUMENT

### A. APPLICABLE LEGAL STANDARDS

The class action device is an exception to the general rule that litigation must be prosecuted by the individually named parties only. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "To certify a class under Rule 23, a plaintiff must first demonstrate: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation of the class." *Williams v.*

*PillPack, LLC*, No. 3:19-cv-5282, 2021 WL 5113467, at *5 (W.D. Wash. Nov. 3, 2021).

Rule 12(f) provides that the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter" to prevent "the expenditure of time and money that must arise from litigating spurious issues." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Rule 12(f) also grants courts the authority to strike class allegations that cannot possibly move forward on a classwide basis." *Pepka v. Kohl's Dep't Stores, Inc.*, No. 2:16-cv-4293, 2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016) (collecting cases). Rule 23 instructs courts to determine whether a class may be certified "[a]t an early practicable time." Fed. R. Civ. P. 23. Courts can, and should, strike a plaintiff's class allegations when it is clear from the face of the pleadings that a class action cannot be maintained. *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (granting motion to strike class allegations and noting, "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery"); *Collins v. Gamestop Corp.*, No. 3:10-cv-1210, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010) (same); *Hovsepian v. Apple, Inc.*, No. 5:08-cv-5788, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

Courts have acknowledged the importance of assessing the suitability of class treatment prior to discovery to avoid the unnecessary expenditure of resources and delay, particularly when discovery is unlikely to change the outcome of the litigation. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *J.T. v. City and Cnty. of San Francisco*, No. 23-cv-06524, 2024 WL 3013649, at *2 (N.D. Cal. June 13, 2024); *Herrera v. Cathay Pac. Airways Ltd.*, No. 20-cv-03019, 2021 WL 673448, at *4 (N.D. Cal. Feb. 21, 2021). It is clear on the face of Plaintiff's Complaint that she cannot satisfy Rule 23's requirements. Because discovery will not result in a different outcome, as discussed below, Plaintiff's class allegations should be stricken now. Indeed, in TCPA class actions, courts cannot easily determine "whether an individual is part of the class without extensive individual inquiry into the merits of [the p]laintiff's claim." *Gannon v. Network Tel. Svs., Inc.*, No. 2:12-cv-9777, 2013 WL 2450199, at *2–3 (C.D. Cal. June 5, 2013)

(denying the plaintiff's motion for class certification because the "[p]laintiff's class definition would require individual inquiry into whether the potential class members consented to receiving text messages" and the plaintiff "fail[ed] to satisfy the predominance requirement").[1]

### B. PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE EVIDENCE OF INDIVIDUAL ISSUES RELATING TO CONSENT, PERMISSION AND ESTABLISHED BUSINESS RELATIONSHIPS WILL PREDOMINATE

Plaintiff asserts a single cause of action alleging that Sunrun violated the TCPA, 47 U.S.C. § 227, by making certain telephone calls to Plaintiff and the proposed class while their numbers were allegedly registered on the NDNCR.

The DNC provisions of the TCPA, 47 U.S.C. § 227(c), provide a private right of action for persons who have received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" prescribed under Section 227(c) of the TCPA. 47 U.S.C. § 227(c)(5). The corresponding federal regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any *telephone solicitation* to . . . [a] residential telephone subscriber who has registered his or her telephone number on the [NDNCR]." 47 C.F.R. § 64.1200(c)(2) (emphasis added). Plaintiff must establish that she: (1) received a "telephone solicitation;" (2) is a "residential telephone subscriber;" (3) registered her number on the NDNCR; and (4) received more than one violative telephone call within a 12-month period. *Id.* Plaintiff seeks to certify the DNC Registry Class premised upon this claim. But Plaintiff cannot, and will never be able, to meet Rule 23's requirements to certify this class.

First, "[t]elephone solicitation" is defined as a call initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," but expressly excludes a call made "[t]o any person with that person's prior express invitation or

---

[1] *See also Vandervort v. Balboa Cap. Corp.*, 287 F.R.D. 554, 558 (C.D. Cal. 2012) (denying class certification because individualized inquiry was needed to determine consent); *Dixon v. Monterey Financial Svs., Inc.*, No. 3:15-cv-03298, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016) (granting motion to strike class allegations because "a determination of whether a person is a member of the class is dependent on whether he/she prevails on the merits of the TCPA claim alleged").

permission" or any call "[t]o any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). The TCPA defines an established business relationship ("EBR") as including, among other persons, individuals with whom there is an existing customer relationship as well as persons who made an "inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5).

Second, to succeed on a TCPA DNC claim, a plaintiff must prove that they were a "residential telephone subscriber," meaning the number called was used for "residential purposes." *Lee v. Loandepot.com, LLC*, No. 6:14-cv-1084, 2016 WL 4382786, at *6–7 (D. Kan. Aug. 17, 2016) (citations omitted); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 654–55 (W.D. Tenn. Feb. 4, 2020) (citing 47 C.F.R. § 64.1200(c)).

Third, the class allegations should be stricken based upon Plaintiff's conflict of interest.

### 1. Plaintiff's Proposed Classes Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement

Courts in this and other circuits have specifically found, in TCPA cases, that when a putative class includes persons who consented to receive the calls at issue, and/or are potentially subject to an EBR, a plaintiff's claims are not suited for class treatment because each of these issues would require individualized inquiries to resolve for each absent class member, as they would for Plaintiff herself here. For example, in *Felix v. North American Asset Services, LLC*, the court struck plaintiff's TCPA class allegations because "in order to determine whether a class member is entitled to relief under the TCPA (or determine whether an individual is a member of the class)," the court would "be required to determine whether each individual gave 'prior express consent.'"[2] No. 2:12-cv-3718, 2012 WL 12551406, at *3 (C.D. Cal. Sept. 5, 2012) (citing *Hicks*

---

[2] *Williams*, 2021 WL 5113467, at *5 (decertifying class where plaintiff failed to demonstrate that common questions and proof could "resolve the issue of consent for all members of the proposed class"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) ("Since there is no way to employ generalized proof to prove consent, or lack thereof, [plaintiff] has failed to meet his

*v. Client Servs., Inc.*, No. 0:07-cv-61822, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) (declining to certify TCPA class because a trial on individualized issues of consent would "degenerat[e] into mini-trials on consent of every class member"); *Sorsby v. TruGreen Ltd. P'ship*, No. 1:20-cv-2601, 2023 WL 130505, at *6 (N.D. Ill. Jan. 9, 2023) (striking plaintiff's class based on defendant's predominance and commonality theories because "plaintiff [on the DNC Registry,] and another subset of class members [would] likely be subject to the EBR defense, [and] the Court [would] necessarily be required to complete individualized inquiries into each class member's business relationship with [defendant].") Moreover, these same issues present themselves with respect to the residential subscriber element of Plaintiff's claim.

### a. Individualized Issues of Consent Destroy Predominance

Class treatment is reserved for instances where certifying a class would facilitate judicial efficiency. As stated above, Plaintiff's proposed class definition necessarily includes individuals who cannot state a TCPA claim, including: (1) Sunrun's existing or prior customers who have an EBR with Sunrun; (2) individuals who provided express written consent to be contacted; (3) individuals who received calls on non-residential phone numbers; and (4) those persons who expressed interest in solar in response to an express request to be called. This proposed class definition would result in likely hundreds (if not more) mini-trials to ascertain which members of Plaintiff's purported class consented to Sunrun's calls, were called based on an inquiry, or had an EBR with Sunrun. This destroys predominance.

Plaintiff's own circumstances illustrate the point. In her Complaint, she alleges that she

---

burden under Rule 23(b)(3) because individual issues predominate over common ones."). Where resolution of the case requires individualized inquiries into each class member's individual claims or defenses, class treatment is inappropriate. *See, e.g.*, *E&G, Inc. v. Mount Vernon Mills, Inc.*, No. 6:17-cv-318, 2019 WL 4034951, at *7 (D.S.C. Aug. 22, 2019) (denying TCPA class certification that required an "individual determination regarding permission and authorization"); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 688–89 (D. Md. 2017) (collecting TCPA cases denying certification because individualized issues defeated predominance); *Levitt v. Fax.com*, No. 1:05-cv-949, 2007 WL 3169078, at *3, 8 (D. Md. May 25, 2007) (decertifying TCPA class because "highly individualized [analysis] would require a separate inquiry for each individual class member").

"never requested the calls or provided her consent to receive them." (Compl. ¶ 20). She also alleges that that the purported calls were "nonconsensual encounters" and that the calls she received were "unsolicited." (*Id.* ¶¶ 22, 33.) Further, Plaintiff claims that her phone number is a residential telephone line. (*Id.* ¶ 13.)

Additionally, Plaintiff defines her class as

> [a]ll persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls [sic] from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

(Compl. ¶ 24.) The way in which Plaintiff defines her class necessarily includes persons who completed an online inquiry who were interested in Sunrun's offerings, and will not dispute that they solicited and/or provided written permission to be contacted on their phone numbers. Even Plaintiff's own Complaint contradicts itself by confirming that it is inappropriate to pursue a class of such persons who provided their permission to be contacted. (*See* Compl. ¶ 33) (alleging Plaintiff's claims are typical of the proposed class because she allegedly, "like all other Class Members, received *unsolicited* telephonic sales calls from [Sunrun] without giving them her consent to receive such calls") (emphasis added.)

Plaintiff ignores these individualized issues and instead defines the proposed DNC Registry Class as anyone that received more than one call within a 12-month period four years prior to filing the Complaint. The receipt of more than one phone call in a 12-month period, however, is not by itself a violation of the TCPA. Even if potential class members could dispute their consent and/or the residential status of their numbers, those disputes too would need to be resolved based on the facts and circumstances at issue with respect to those individual call recipients—just as they will need to be resolved with respect to Plaintiff.

Courts have rejected such claims for class treatment. *See Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013) (finding a "classwide trial on the merits would be untenable and would eventually degenerate into a series of individual trials regarding the 'various circumstances unique to each putative class member's interactions with Hilton'");

8                                              CASE NO. 4:24-CV-07877-JST
DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS

*Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 293 (N.D. Ill. 2014) (striking plaintiff's class, which included individuals on the DNC registry, because "[i]n order to determine whether each potential class member did in fact revoke his or her prior consent at the pertinent time, the [c]ourt would [have] have to conduct class-member-specific inquiries for each individual").

### b.     EBR Issues Destroy Predominance

Plaintiff's overbroad proposed class definition also improperly includes Sunrun's customers with EBRs, who cannot state a claim against Sunrun. *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Sunrun has an EBR with a putative class member because that person may be an existing customer or has made an inquiry preceding the call at issue. In those instances, a telephone call to that person does not violate the TCPA. Plaintiff herself alleges that she received *unsolicited* calls, "like all other class members," but her class definition includes Sunrun customers, as well as those with an EBR with Sunrun, making her definition untenable. (Compl. ¶ 33.) Thus, the class allegations should be stricken.

### c.     Residential Subscriber Issues Destroy Predominance

As noted, to succeed on a TCPA DNC claim, a plaintiff must prove that they were a "residential telephone subscriber," meaning the number called was used for "residential purposes." *Lee*, 2016 WL 4382786, at *6–7 (citations omitted); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 654–55 (W.D. Tenn. Feb. 4, 2020) (citing 47 C.F.R. § 64.1200(c)). Not only does Plaintiff's proposed DNC class require individualized inquiry into whether each phone number called was a residential telephone subscriber, but she does not even attempt to narrow her class to include only residential phone lines in the first place, broadly including all telephone numbers—whether residential or not. (Compl. ¶ 24.) That is similarly inappropriate.

### 2.     Plaintiff Cannot Satisfy the Adequacy Requirement of Rule 23 Due to Counsel's Conflict of Interest

Pursuant to the adequacy requirement, courts consider whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a) refers to adequacy of both class representatives *and* class counsel. *See General Telephone Co. of*

*Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982) ("[The adequacy] requirement . . . raises concerns about the competency of class counsel and conflicts of interest."); *Ortiz v. Firebroad Corp.*, 527 U.S. 815, 856 (1999) (citing 5 J. Moore, T. Chorvat, D. Feinberg, R. Marmer, & J. Solovy, Moore's Federal Practice § 23.25[5][e], p. 23–149 (3d ed. 1998) ("[A]n attorney who represents another class against the same defendant may not serve as class counsel.")). The purpose of the adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. at 157–58 n. 13); *see also Ortiz*, 527 U.S. at 569 ("No actual conflict of interests is required for disqualification; even the appearance of divided loyalties of counsel is contrary to class counsel's responsibility to absent class members.") (internal citations omitted).

Here, Plaintiff's California counsel seeks to simultaneously represent two overlapping classes, creating an inherent conflict of interest that questions his adequacy as class counsel in both cases. Rule 23(a)(4) requires that the representative parties, including counsel, "fairly and adequately protect the interests of the class." This threshold inquiry is so crucial that the rule requires consideration of "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Plaintiff's counsel seeks to represent different plaintiffs with overlapping purported putative classes, in different actions, proceeding at the same time with the same claims, same California counsel, and same defendants. The risk of Plaintiff's counsel compromising one putative class or plaintiff for another is extremely high, and should be disqualifying.

*Lou v. Ma Laboratories, Inc.* is instructive here. 5:12-cv-05409, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014). In *Lou,* this Court addressed the adequacy of class counsel to represent similar putative classes. *Id.* In that case, the Court concluded that "[w]hen there are different plaintiffs in different actions proceeding at the same time with the same claims, same counsel, and same defendants, the risk of counsel compromising one class for another is intensified." *Id.*, at *2. In *Lou*, class counsel had a conflict of interest and thus could not adequately represent the class, because class counsel represented different plaintiffs in separate actions proceeding

simultaneously with similar claims and evidence against the same defendants. *Id.* The Court held that "[a] class in this case deserves to be championed by its counsel unencumbered by their duties to other clients." *Id.*

Similarly, in *Kuper v. Quantum Chemical Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992), the court found counsel inadequate because they represented another class with overlapping claims against the same defendant and "both Plaintiff classes clearly seek recovery from a common pool of assets." Likewise, in *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 588 (W.D. Tex. 2002), the court denied certification in part because "[l]ead counsel in th[e] suit [were] involved in multiple lawsuits against pcOrder.com in which they [sought] to represent different classes." *Id.* at 588–90. The court noted that "the interests of the counsel may conflict with the members of one or more of the classes . . ." and "the case law deems the *appearance* of conflict problematic, and actual and apparent conflict currently exist." *Id.*; *see also Sullivan v. Chase Inv. Servs. of Bos., Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) (the court ordered "counsel [to] submit an affidavit within five days . . . certifying that they have completely withdrawn from further representation" in a separate case because of "[t]he [c]ourt's major concern about counsel['s] . . . role in a parallel securities fraud case against [the same defendant]"); *Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.*, 102 F.R.D. 183, 192 (N.D. Ohio 1984) (the court found counsel inadequate because the same counsel attempted to represent both "former employees and the proposed class . . . seeking to tap the same pool of [defendant's] assets"); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) (the court found that counsel was "not adequate to represent the absent class members" because it put "potential class members [] at risk that counsel will trade off the interests of certain of its clients to the detriment of other clients"); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (requiring withdrawal due to the mere "'appearance' of divided loyalties" of dual representation). The same holds true here. Mr. Oliver purports to represent the putative class defined in this action as

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls [sic] from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date

11      CASE NO. 4:24-CV-07877-JST
DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS

of trial.

(Compl. ¶ 24.) This case was filed on November 11, 2024, thus the class is defined to include anyone that received a call from Sunrun from November 11, 2020 through the present. Mr. Oliver simultaneously purports to represent a class in this same District, in an action captioned *Strickland v. Sunrun Inc.*, No 3:23-cv-05034-JD. In *Strickland*, the TCPA putative class is defined as

> All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls [sic] from or on behalf of Sunrun (3) within a 12-month period (4) from the four years prior to filing the complaint through the date of trial.

(RJN Ex. B, ¶ 48.) *Strickland* was filed on October 1, 2023, and the class is defined to include anyone that received a call from Sunrun from 2019 through the present.

In *Lou*, the court concluded there was a conflict of interest for class counsel where the class definitions and allegations were only similar. Here, the TCPA DNC class definitions in *Strickland* and the present case are identical except for one word: "residential." The only other difference between the two is when the complaints were filed. As set forth above, this clear conflict of interest must come to an end. Plaintiff's class claims must be dismissed for the apparent conflict of interest her counsel possesses. *See Lou*, 2014 WL 68605, at *2.

**IV.    <u>CONCLUSION</u>**

For the foregoing reasons, Sunrun's motion to strike the class allegations should be granted.

| | | |
|---|---|---|
| 1 | DATED: January 27, 2025 | KELLEY DRYE & WARREN LLP |
| 2 | | By: */s/ Glenn T. Graham* |
| | | Lauri A. Mazzuchetti (*pro hac vice* forthcoming) |
| 3 | | Glenn T. Graham |
| | | Emily E. Clark (*pro hac vice* forthcoming) |
| 4 | | One Jefferson Road |
| | | Parsippany, New Jersey 07054 |
| 5 | | Telephone: (973) 503-5900 |
| | | Facsimile: (973) 503-5950 |
| 6 | | ggraham@kelleydrye.com |
| | | lmazzuchetti@kelleydrye.com |
| 7 | | eclark@kelleydrye.com |
| 8 | | *Attorneys for Defendant Sunrun Inc.* |