Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

*Local Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY BANKS, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>SUNRUN INC.<br><br>      Defendant. | Case No. 3:24-cv-07877-JST<br><br>Hon. Jon S. Tigar<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Hearing Date on Motion:<br>April 10, 2025<br>Time: 2:00 pm<br>Location: Zoom |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... 1
TABLE OF AUTHORITIES .................................................................................................. 1
INTRODUCTION .................................................................................................................. 3
ISSUES AND BACKGROUND ............................................................................................ 3
LEGAL STANDARD ............................................................................................................. 4
ARGUMENT .......................................................................................................................... 5
   1.   Just because SunRun operates a website to obtain consent does not warrant striking Ms. Banks' claims at the pleadings stage ................................................................................. 5
   2.   The use of the same *local* counsel does not render *class* counsel inadequate. ................. 13
CONCLUSION ..................................................................................................................... 18
CERTIFICATE OF SERVICE ............................................................................................. 19

**TABLE OF AUTHORITIES**

**Cases**

*AIIRAM LLC v. KB Home*, No. 19CV00269LHKVKD, 2019 WL 2896785 (N.D. Cal. July 5, 2019) ............................................................................................................................ 14, 17
*Allen v. Hyland's Inc.*, No. CV1201150DMGMANX, 2012 WL 12887827 (C.D. Cal. Aug. 28, 2012) ...................................................................................................................................... 15
*Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167 (N.D. Cal. 2010) ........................................................................................................................................ 4
*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) ............................ 8
*Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017) ........................................................................ 9
*Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320 (W.D. Okla. 2018) ............................. 10
*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) .................................. 9
*Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256 (N.D. Cal. Mar. 23, 2022) .......................................................................................................................... 11
*Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 WL 7391299 (N.D. Cal. July 22, 2020) ................................................................................................................................. 12
*Cruz v. Sky Chefs, Inc.*, C-12-02705 DMR, 2013 WL 1892337 (N.D. Cal. May 6, 2013) ............ 6
*Felix v. N. Am. Asset Servs., LLC*, No. CV 12-3718-JFW (ANX), 2012 WL 12551406, at *3 (C.D. Cal. Sept. 5, 2012) .......................................................................................................... 7
*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ................................................. 4
*In re Wal—Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007) ........... 5
*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ..................................... 8
*Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013) ............................................. 7
*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995) ............................................................ 17

*Kazda v. Aetna Life Ins. Co.*, No. 19-CV-02512-WHO, 2022 WL 1225032 (N.D. Cal. Apr. 26, 2022) .................................................................................................................................... 15
*Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............ 18
*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ................................................ 8
*Lee v. Loandepot.com, LLC*, No. 14-CV-01084-EFM, 2016 WL 4382786 (D. Kan. Aug. 17, 2016) .................................................................................................................................... 12
*Long v. Graco Children's Prods.*, No. 13-cv-01257-JD, 2014 U.S. Dist. LEXIS 174347 ............ 6
*Lou v. Ma Lab'ys, Inc.*, No. C 12-05409 WHA, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014). 15, 16, 17
*Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232 (S.D. Cal. 2009) ................................................... 5
*Mantha v. Quotewizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024) ........................................ 12
*Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021) .................................................................................................. 4
*Mattson v. New Penn Fin., LLC*, No. 3:18-CV-00990-YY, 2018 WL 6735088 (D. Or. Nov. 6, 2018) .................................................................................................................................. 5, 9
*Mey v. Frontier Communications Corp.*, No. 13-cv-01191-MPS, slip op. (ECF 102) (D. Ct. 2015) .................................................................................................................................... 10
*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ................................. 8
*Mohamed v. Off Lease Only*, 320 F.R.D. 301 (S.D. Fla. 2017) .................................................... 9
*Mortimer v. Baca*, No. CV 00-13002 DDP, 2005 WL 419695 (C.D. Cal. Feb. 16, 2005) .......... 17
*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ................................................................... 16, 17
*Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15, 2015) ...................................................................................................................................... 7
*Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224 (N.D. Cal. 2024). ....................................... 10, 11
*Ross v. Blake*, 578 U.S. 632 (2016) ............................................................................................ 11
*Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014) ........................................................ 16, 17
*Sheftelman v. Jones*, 667 F.Supp. 859 (N.D. Ga. 1987) ............................................................. 17
*Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648 (W.D. Tenn. 2020) ............................. 13
*True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018) .............. 8, 9, 10
*Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022) ..................................................................................................... 8
*Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970 (9th Cir. 2010) .......................................... 4
*Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287 (N.D. Ill. 2014) .................................. 7
*Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500 (S.D.N.Y. 2014) .................................................... 8

**Statutes**
47 C.F.R. § 64.2305 ....................................................................................................................... 11
Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 4
Fed. R. Civ. P. 12(f) ........................................................................................................................ 4
Fed. R. Civ. P. 23 ............................................................................................................... 9, 15, 17

**Other Authorities**
*FCC Report and Order*, 18 FCC Rcd. 14014 (2003) ................................................................... 12
*Newberg on Class Actions* (5th ed.) ............................................................................................ 14

## INTRODUCTION

Defendant SunRun Inc. (SunRun or Defendant)'s motion to strike class allegations must be denied because, as confirmed by multiple other cases, the mere possibility of the affirmative defense of consent is insufficient to justify striking class claims at the pleadings stage. The class pled here, alleging illegal calling conduct arising out of an illegal calling campaign, is the touchstone of cases routinely certified, and upheld, by the Ninth Circuit. And, as jurisprudence from this Court confirms, any contentions that there is a conflict with local counsel here is premature and more properly brought at the class certification stage. Multiple courts across the country have rejected nearly identical arguments to those advanced by Defendant here that similar classes should be stricken because they are allegedly uncertifiable. Defendant's motion should therefore be denied in its entirety.

## ISSUES AND BACKGROUND

The Plaintiff here filed her class action complaint on November 11, 2024, alleging that the Defendant, SunRun, Inc., a seller of residential solar panels and services, called her private cell phone on the National Do Not Call Registry at least 31 times without her consent over the span of about a month. Defendant has moved to strike the class claims at issue here on two independent bases. First, it contends that this case is inappropriate for class adjudication because individualized issues allegedly predominate over classwide ones in that it contends that some class members, not even the Plaintiff, may have provided their consent to be contacted or had an existing business relationship with SunRun. Relatedly, it contends, without corresponding support, that the class may also impermissibly consist of members with business telephone numbers improperly on the Do Not Call Registry. Second, it contends that local counsel here,

Dana Oliver, is inadequate because he is also local counsel for another Plaintiff asserting similar putative class action claims against SunRun in this District. This response follows.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party and deny the motion if there are any doubts. *Id.*

Applying the applicable standard to the motion at bar, "The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021). Rule 12(f) motions developed in the absence of a factual record and without discovery fare no different. Indeed, as it noted, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Dismissing class allegations at the pleading stage is rare because "the parties have not yet engaged in discovery and the shape of a class action is often driven by the facts of a particular

case." *In re Wal—Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007). As such, striking class allegations at the pleadings stage "would be inconsistent with the type of 'rigorous analysis' that this court would endeavor to undertake in deciding whether to ultimately certify a class." *Mattson v. New Penn Fin., LLC*, No. 3:18-CV-00990-YY, 2018 WL 6735088, at *2 (D. Or. Nov. 6, 2018) (denying similar motion to strike in TCPA case).

## ARGUMENT

### 1. Just because SunRun operates a website to obtain consent does not warrant striking Ms. Banks' claims at the pleadings stage

SunRun claims that this class action should be struck on predominance and other grounds because it owns and operates a website through which it contends it obtains consumer information to make telemarketing calls. Critically, SunRun has not pled, nor not produced any evidence, that Ms. Banks provided her information on this website or allegedly consented to receive communications from SunRun. Moreover, SunRun's argument ignores the fact that this Court, as well as those across the country, routinely certify TCPA Do Not Call Registry class actions of the type here, *even when*, unlike here, some potential consent evidence has been adduced. Consent is an affirmative defense for which SunRun will bear the burden of proof as to all class members at trial, and as a result courts have *certified* classes in light of uniform issues with disputed consent evidence, as is likely to be the case here. At bottom, what is needed is discovery to address SunRun's affirmative defense and the possible ways that this Court may be able to address that consent, or lack thereof, on a class basis.

"[M]otions to strike class allegations are generally disfavored because 'a motion for class certification is a more appropriate vehicle.'" *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009). As Courts in this District have held "[M]any courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion,

after the parties have had an opportunity to conduct some discovery." *Long v. Graco Children's Prods.*, No. 13-cv-01257-JD, 2014 U.S. Dist. LEXIS 174347, at *14 (Donato, J.) (quoting *Cruz v. Sky Chefs, Inc*., C-12-02705 DMR, 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013)).

Here, SunRun does not even claim, as claimed by the defendants *at class certification* in some of the cases cited by SunRun, that Ms. Banks opted-in to receive calls from SunRun. Rather, all it claims is that it operates a website through which it obtains consent to contact customers, and that those customers would not properly be part of any class. But notably absent from SunRun's contentions in this regard is *any evidence* or even pleading that Ms. Banks submitted her information to SunRun's website as an initial matter.

As such, this Court can certify the proposed class here and then exclude from the class those potential class members for which SunRun possesses legally sufficient consent information for which it ultimately bears the burden of proving both at class certification and at trial. Those issues do not destroy predominance; on the contrary, if SunRun is relying on a singular source, its own website and records, to obtain consent for class members in this case, then classwide issues of who consented and whether or not the website obtained legally sufficient consent as an initial matter is the touchstone of a uniform, classwide issue that predominates over individualized ones. This Court can look to a single set of records: SunRun's website and the books and records obtained thereby, to ascertain and exclude from any potential class potential members who, unlike Ms. Banks, provided their information.

For the very reason that SunRun cannot even point to Ms. Banks' consent, and in light of Ms. Banks' corresponding contention denying she provided her information to SunRun, SunRun's motion to strike class allegations should be denied. As with Ms. Banks and other class members, and unlike other class members for which SunRun will presumably have a

corresponding consent record which the Court would then exclude from the class, SunRun has no evidence that Ms. Banks provided her information on SunRun's website. Nor do the cases cited by SunRun on this point dictate a contrary result. For example, in *Jamison v. First Credit Servs., Inc.*, the court denied certification, at the *class certification stage*, when determining class membership would require the Court to *scour the defendant's notes* to ascertain how telephone numbers were obtained, including through a skiptrace method, which would entail a "labor intensive review." 290 F.R.D. 92, 107 (N.D. Ill. 2013). Similarly, in *Felix v. N. Am. Asset Servs., LLC*, this Court denied certification, again at the class certification stage, in an FDCPA claim against the defendant when it was impossible to determine whether a debt collector had spoken with a consumer or a person other than the consumer, as required by the statute. No. CV 12-3718-JFW (ANX), 2012 WL 12551406, at *3 (C.D. Cal. Sept. 5, 2012). The *Hicks*, *Sorsby*, and *Connelly* courts reached similar results, both after discovery and at the class certification stage, when individualized inquiries were necessary to see who *revoked* or lacked disputed consent. And in *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014), the court struck a *consent revocation class* actually *refused to strike* a no-consent class.

Those issues are not even remotely close to what SunRun claims here, contending only that it obtains consent to contact certain customers through its website or through interested customers. And there are not even individualized issues with SunRun's website, because SunRun presumably maintains records of those website submissions and such customers. A class is preeminently *certified* if "membership . . . can be determined by [answering questions using] objective criteria," such as if the Defendant here possesses records indicating a class member provided their number. *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015). Assuming that Defendant's burden of proof was

otherwise met, it would be trivial to simply exclude any telephone number from the class that was submitted to SunRun's website. And, as mentioned above, SunRun doesn't even contend that Ms. Banks' number was submitted to that website. For that matter, this Court could do the same with SunRun's book of business and lists of customers who had inquired, which would also exclude from the class any such customers, but again, and critically, not Ms. Banks. It is little wonder courts routinely hold that uniform reviews of a defendant's proffered consent record can, as a result, be accomplished in an "administratively feasible" manner. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019).

Defendant's standard is inconsistent with the law of consent in TCPA matters such as this one. Courts around the nation have held that TCPA consent issues are not problematic from a class certification perspective, particularly when there are potentially uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). In fact, as the Seventh Circuit has stated, "Class certification *is normal* in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (emphasis added). And, when the Defendant has not met its burden of demonstrating consent applicable to the class, let alone at the pleadings stage, a class is properly *certified*, not stricken. *See, e.g*, *Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *5 (S.D.N.Y. Sept. 29, 2022).

Fortunately for consumers bombarded with illegal telemarketing calls, it is not enough for a telemarketer to allege consent, it must prove it. *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 925 (9th Cir. 2018) ("Express consent is an affirmative defense to a claim

brought under a provision of the Telephone Consumer Protection Act of 1991 (TCPA) dealing with unsolicited telephone calls, and that the defendant bears the burden of proving such consent."). What's more, merely mentioning that discovery will reveal that one has an affirmative defense to some class members' claims, and SunRun doesn't and can't do even *that* with respect to Ms. Banks, is insufficient to strike class allegations, as appellate courts have ruled in other TCPA cases. *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance").

Because consent is an *affirmative defense* for which the Defendant bears the burden of proof, it is a particularly inappropriate yardstick for measuring predominance. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). Attempts to refute a claim by a defense are properly addressed in a motion for summary judgment, not a motion to dismiss. *Mattson*, 2018 WL 6735088, at *3. And, as the Court noted in *Mattson*, "It follows that the documents presented in support of New Penn's affirmative defense do not compel this court to strike the class allegations at this stage of the litigation." *Id.* The mere allusion to potential consent and established business relationship defenses are not enough to find Plaintiff's classes uncertifiable at this or any other stage. *See, e.g.*, *True Health*, 896 F.3d at 932-33 (holding predominance was satisfied where "the record shows . . . little or no variation" in the forms used to obtain consent); *Mohamed v. Off Lease Only*, 320 F.R.D. 301, 316 (S.D. Fla. 2017)

Plaintiff's class is not overbroad merely because of a purported defense of consent to some potential class members, and not even Ms. Banks, under the TCPA. Even at the *class*

*certification* stage, evidence of a defense as to some prospective class members does not render a class overbroad if the plaintiff demonstrates a means of ultimately excluding consumers that are subject to the defense from the class. *True Health*, 896 F.3d at 932-33 (predominance satisfied in TCPA case where "the record shows . . . little or no variation" in the forms used to obtain consent). Moreover, discovery can be used to identify which telephone numbers that were called had provided consent and any other class member identification issues. *See, e.g., Mey v. Frontier Communications Corp.*, No. 13-cv-01191-MPS, slip op. (ECF 102) (D. Ct. 2015); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018).

And the Defendant's claims that it may have called non-residential numbers fares no better. Defendant's argument in this regard is a bit strained as an initial matter, particularly as it does not sell its services to businesses at all and bills itself as "The #1 Home Solar Power Company" on its homepage, https://www.sunrun.com/. On this point, this very Court and Judge's opinion in *Payne v. Sieva Networks, Inc.*, is distinguishable. In that case, the Court there, unlike here, held that the plaintiff failed to make the required showing as to predominance when the evidence adduced by the defendant there revealed that the calls were placed to "target[] trucking businesses." 347 F.R.D. 224, 227 (N.D. Cal. 2024). In arriving at its decision in *Payne*, the court pointed to the fact that the defendant obtained the numbers it called from lists of numbers "registered with the USDOT, which is some indication of a non-residential use." *Id.* at 228. That is not a problem here, as the calls were placed by SunRun to sell its residential solar products and services, and it is readily apparent that SunRun does not even service the commercial market, and as a result, would have no reason to call a business line. As such, SunRun will be unable to rebut the presumption that the numbers it called were not residential,

since it would have no reason to call anything but residential numbers, unlike the Defendant in *Payne*, who was calling to provide services to trucking businesses. *See id.* at 227.

Moreover, under the applicable regulatory framework, it is apparent that the Plaintiff's phone number is residential. How does the FCC, the agency charged with implementing rules for Do Not Call Registry, define "residential subscriber" as opposed to "business subscriber?" Quite simply. As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). And, under the TCPA, a "residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber" and a business subscriber is a "subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b), (d). This language which excludes only one type of service–telephone exchange services for businesses–from the protections afforded by the DNC. The fact the regulation contains only one exclusion demonstrates that the regulation errs on the side of being overinclusive, not underinclusive.

The only way of proving a number is *not* residential, therefore, is by showing that the number is assigned to a telephone exchange service for business, a fact which is readily ascertainable from various commercial databases, as the Court did in *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *3 (N.D. Cal. Mar. 23, 2022), and distinguished in *Payne*, 347 F.R.D. at 227. In *Bumpus*, this Court concluded that it was reasonable for an expert to assume that the numbers were residential because the defendant's agents "were instructed to call residential real estate owners" and an expert used a LexisNexis database "to identify numbers associated with businesses or the government." *Bumpus*, 2022 WL 867256, at *3. And in *Chinitz v. Intero Real Estate Servs.*, this very Court

again rejected a challenge to an expert's use of LexisNexis to remove business numbers from a putative class. No. 18-cv-05623-BLF, 2020 WL 7391299, at *6 (N.D. Cal. July 22, 2020).

What's more, the FCC has adopted enhanced protective standards for cellular telephone numbers. To this end, the FCC has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list *are residential subscribers*." *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up) (emphasis added). This is so, *even if they also use such numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer*, 925 F.3d at 657, concluded the TCPA's language was clear and upheld certification of a class of cell phones on the Do Not Call Registry, which it held were, by virtue of their mere registration, *presumptively residential. See also Mantha v. Quotewizard.com, LLC*, 347 F.R.D. 376, 397 (D. Mass. 2024) (rejecting defendant's argument "determination of whether the proposed Class Members' telephone numbers are 'residential'…is too individualized of an inquiry to permit a finding of predominance[,]" because "numbers on the NDNCR benefit from the 'presumption that [their] cellular phone number constitutes a residential telephone subscriber[.]'"). Furthermore, discovery can address the residential nature of telephone numbers that are at issue. *Id.* at 389 ("Of course, QuoteWizard itself is the source of the original list of numbers, and the fact that it was aiming its telemarketing campaign at consumers tends to suggest the original list is comprised of residential numbers).

Neither *Lee* nor *Stevens-Bratton* denied class certification on the specious "residential" grounds argued by the Defendant. *Lee* was a case brought by a *pro se* plaintiff that was not even a class action and which did not plead whether the plaintiff was even a residential subscriber. *Lee v. Loandepot.com, LLC*, No. 14-CV-01084-EFM, 2016 WL 4382786, at *9 (D. Kan. Aug. 17, 2016). And in *Stevens-Bratton*, the consumer made a "conclusory allegation" that the

number at issue was a residential line, in accord with the aforementioned case law, without providing any evidence to that effect at summary judgment. *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 657 (W.D. Tenn. 2020). That portion of the Court's opinion in that case did not address the class issues, as Defendant here seems to insinuate, because the plaintiff there could not prove her own claims at summary judgment in that regard in the face of TruGreen's challenge to whether the number was used for residential or business purposes.

Here, there has been no showing that the Defendant made any calls with consent or to non-residential numbers, or that it was calling other than to sell residential solar panels to residences. Defendant has not made a showing that including or excluding class members on those bases cannot be accomplished by the Defendant's own books and records and other commercial databases. All that has been shown is that the Defendant has a website and customers, and records of the same, which, at best, discovery into such records would be used to eliminate such putative class members, just as the Ninth Circuit directed in *McKesson* with respect to a TCPA case. Because SunRun's argument is extraordinarily weak and premature, it should be addressed, if at all, at class certification, not at the pleadings stage.

### 2. The use of the same *local* counsel does not render *class* counsel inadequate.

SunRun also takes issue with Plaintiff's choice of local counsel here, arguing that counsel is *per se* inadequate because the same local counsel is also local counsel in another class action case, *Strickland v. SunRun.* Those concerns can be quickly dispensed with, as local counsel here, Dana Oliver, has no contingent stake in the outcome of this litigation. On this account, SunRun cherry-picks the law on this issue, addressed at class certification, and argues

that this perceived conflict with *local counsel*, which is not even a conflict, renders *class* counsel inadequate so as to justify *striking* class counsel at the *pleadings stage*. Not so.

As has been articulated above, the Ninth Circuit is particularly hostile to motions to strike class allegations at the pleadings stage, which are routinely denied in circuits across the country. As such, the motion is premature. "The question of whether plaintiffs' counsel have a conflict of interest that warrants disqualification is a question that should be addressed on a motion to disqualify or as part of class certification, where the nature of the alleged conflict of interest can be fully explored." *AIIRAM LLC v. KB Home*, No. 19CV00269LHKVKD, 2019 WL 2896785, at *2 (N.D. Cal. July 5, 2019). And, as articulated in the treatise *Newberg on Class Actions* § 3:75 (5th ed.), "only . . . conflicts that are material . . . rather than merely trivial, speculative or contingent on the occurrence of a future event—will affect the adequacy of class counsel."

As an initial matter, it should be noted that this Court imposes a local counsel requirement. Local counsel here, Dana Oliver is licensed in California and is willing to take on such class action cases alleging violations of the Telephone Consumer Protection Act. Understandably, Mr. Oliver's services are in demand with other attorneys who run similar cases, sometimes against the same defendants, like SunRun, who itself is no stranger to telemarketing. However, it should be noted that, despite sharing *local* counsel here, Mr. Oliver is not working on contingency and thus has *no pecuniary interest* in the outcome of this litigation. Discovery will bear this fact out, including the fact that Mr. Oliver has no substantive role in developing the arguments and other requirements in this litigation.

Defendant's objection to the overlap of Mr. Oliver as *local* counsel in both this matter and in *Strickland* rests on adequacy grounds, but, as noted, this argument is flawed because Mr.

Oliver is local counsel only by operation and requirement of the local rules; the Plaintiff does not intend to designate or seek to have him as *class* counsel. Defendant's argument is further flawed because it is premature: both this case and *Strickland* are at the pleadings stage, not at class certification, and neither case has been certified, let alone Mr. Oliver *appointed* class counsel in any capacity, and as such, any conflicts here are only potential, not actual. To determine adequacy, courts evaluate whether the named plaintiffs and their counsel "have any conflicts of interest with other class members" and whether they will "prosecute the action vigorously on behalf of the class." *Kazda v. Aetna Life Ins. Co.*, No. 19-CV-02512-WHO, 2022 WL 1225032, at *5 (N.D. Cal. Apr. 26, 2022). Notably, the perceived "conflict" here does not fall within Rule 23(a)(4)'s adequacy analysis or standard.

  Here, under Rule 23(a)(4)'s adequacy standard, it is clear that there is no apparent threat to adequacy because there is no conflict of interest with any other class members *in this case* and no indication that Mr. Perrong, who will seek to be appointed as *class counsel*, will be unable to prosecute this action vigorously on behalf of the class. *Id.* Apart from Mr. Oliver, who is local counsel in both cases, neither Mr. Perrong nor his client, Ms. Banks, are at all involved in the *Strickland* case. Class action cases are the exception to the general rule that there is a reduced burden to showing inadequacy of representation. *Allen v. Hyland's Inc.*, No. CV1201150DMGMANX, 2012 WL 12887827, at *3 (C.D. Cal. Aug. 28, 2012).

  This Court's decision in *Lou* is completely inapposite and does not stand for the proposition that this Court should strike either Mr. Perrong or Mr. Oliver as inadequate at the *pleadings stage*. There, at the *class certification* stage, the Court held that the named law firm could not prosecute the action vigorously on behalf of another class when they were already representing a *certified class against the same defendant*. Here, there is no "risk of counsel

compromising one class for another" because Mr. Oliver, the only overlapping counsel, is acting in the limited capacity as *local counsel* in both cases and has no pecuniary interest in the outcome of the litigation, as he is not working on a contingency basis and has no right to any portion of a class recovery. *Lou v. Ma Lab'ys, Inc.*, No. C 12-05409 WHA, 2014 WL 68605, at *2 (N.D. Cal. Jan. 8, 2014). Mr. Oliver's involvement in both cases does not create any "opportunit[y] for counsel to manipulate the allocation of settlement dollars." *Id.* Similarly, in *Ortiz v. Fibreboard Corp.*, cited by both *Lou* and the Defendant, "the same lawyers representing plaintiffs and the class had also negotiated the separate settlement of 45,000 pending claims." 527 U.S. 815, 852 (1999).

      This Court's subsequent decision in *Sandoval v. Ali* indicates that the Defendant's request to deem Plaintiff's counsel inadequate at the pleadings stage is unquestionably premature. There, this Court, analyzing both *Lou*, *Ortiz*, and various treatises, declined to disqualify counsel at the pleadings stage, as here. 34 F. Supp. 3d 1031, 1045–1047 (N.D. Cal. 2014). This Court's well-reasoned analysis in *Sandoval* is particularly noteworthy, greatly crediting the plaintiffs' arguments, as here, that the issue was not yet ripe and that there was no actual conflict because the basis for the same was disputed. *Id.* at 1045. Moreover, the court noted that "class counsel may represent multiple sets of litigants, whether in the same action or a related proceeding, so long as the litigants' interests are not inherently opposed" and that counsel may be inadequate only if they seek to "represent class members with different interests." *Id.* at 1045-46.

      Noting that "class counsel will not necessarily be disqualified merely for representing another class against the same defendants when, for instance, the purported conflicts are illusory and speculative, the class has co-counsel untainted by the conflict, and there were procedural

safeguards protecting the class's interests," this Court found that it was inappropriate and premature to make such a determination at the pleadings stage in the absence of a full factual record demonstrating that class counsel clearly could not adequately represent the proposed class because of palpable conflicts, as in *Lou* and *Ortiz*. *Id.* at 1046 (citing *Sheftelman v. Jones*, 667 F.Supp. 859, 865–66 (N.D. Ga. 1987)). This very Court should similarly hold here.

The remainder of the out-of-district, nonbinding citations cited by the Defendant are similarly distinguishable, because they were *all* determined at the class certification stage, unlike here, where the Defendant seeks such an extraordinary remedy impermissibly and prematurely, as this Court has already noted in *Sandoval* and *AIIRAM*. *Kuper*, Krim, *Sillivan, Jackshaw*, and *Kurczi* were *all* decided at the class certification stage, not on a motion to strike class claims, as here, which *this Court has twice confirmed* that seeking to strike the class claims on this basis is a premature procedural posture. Moreover, that decision is not at all at odds with the Ninth Circuit's holding in *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995), where the Ninth Circuit affirmed the district court's holding, again, *at class certification*, requiring conflicting counsel to withdraw from their conflicting representation.

Nor do the fact that there exist two *uncertified* class action cases with similar definitions render or otherwise moot Ms. Banks' class claims here at all inadequate, especially prior to class certification and here at the pleadings stage. As noted above, the argument is premature as neither class has been certified or sought to be certified. For example, the Central District of California has rejected the notion that those *who opted out of a previous* class action settlement could assert yet another class action with nearly identical claims, noting that Rule 23 contains no such restrictions. *Mortimer v. Baca*, No. CV 00-13002 DDP, 2005 WL 419695, at *4 (C.D. Cal. Feb. 16, 2005). To the extent that SunRun feels that the claims here and in *Strickland* overlap,

the proper remedy is to bring a motion to consolidate such actions to the extent that they arise from the same misconduct and permit the attorneys to battle out or jointly seek to represent the new consolidated class. *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1162 (C.D. Cal. 2015).

In any event, the point remains that the Defendant's motion to strike the *putative* class here on adequacy grounds is premature and will not pose an actual conflict at class certification as the only "conflict" here is both class's use of the same local counsel. To the extent that an actual conflict becomes apparent as either this case or *Strickland* move toward class certification, and Plaintiff respectfully submits that the mere correspondence of the same local counsel does not rise to such a level, then this Court should deal with that issue at the appropriate time in an appropriate manner, such as through consolidation or requiring Plaintiff to seek to substitute alternative local counsel. But as this Court has stated twice before, the remedy sought by Defendant here is premature.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that SunRun's Motion to Strike ought to be DENIED.

Dated: February 24, 2025   PLAINTIFF, individually and on behalf of all others similarly situated,

By: /s/ Andrew Roman Perrong
Andrew Roman Perrong
PERRONG LAW LLC
Email: a@perronglaw.com
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529 (CALL-LAW)
Fax: 888-329-0305

*Attorney for Plaintiff and the Proposed Class*

Plaintiff's Opposition to Defendant's Motion to Strike Class Allegations
*Banks v. SunRun Inc.*, Civil Action No. 3:24-cv-07877-JST
18


## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: February 24, 2025.

                                */s/ Andrew Roman Perrong*
                                Andrew Roman Perrong, Esq.