Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

Local Attorney for Plaintiff and Putative Class

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY BANKS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>SUNRUN INC.<br><br>*Defendant.* | Case No. 4:24-cv-07877-JST<br><br>PLAINTIFF PEGGY BANKS' REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT<br><br><br>Hon. Jon S. Tigar<br>Hearing Date: May 28, 2026<br>Time: 2:00 pm<br>Location: Zoom |

**INTRODUCTION**

SunRun's Opposition confirms the weakness of its position. Rather than address the substance of Plaintiff's proposed amendment, SunRun asks this Court to deny leave based on a mischaracterization of the applicable regulation and a self-serving declaration that facially contradicts the plain text of its own records. But the futility standard under Rule 15 reflects a lighter version of the Rule 12(b)(6) standard, and amendment should be denied as futile only where the deficiency is "clear" and cannot be cured through further amendment. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). SunRun's arguments fall well short of that standard. The motion should be granted on Rule 15's liberal standard.

**ARGUMENT**

**A. Plaintiff has Article III standing to assert an internal Do Not Call claim.**

SunRun's standing argument misconstrues the applicable regulation. SunRun focuses exclusively on the premise that Plaintiff must have "requested" to be placed on its internal do-not-call ("IDNC") list. But the regulation SunRun itself identifies, 47 C.F.R. § 64.1200(d), contains multiple subsections, and its protections are not limited to the scenario SunRun describes. Section 64.1200(d)(4) can be violated in two distinct ways: (1) by refusing to honor a request to be placed on an internal do-not-call list, or (2) by calling a number that is *already on an internal do-not-call list*. *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1184 (D.

MOTION TO AMEND
*Banks v. SunRun Inc.*
-2-

Utah 2021). In the latter such case, the Court need not concern itself with the trifle of whether or not a valid request was made to be placed on an internal do-not-call list by the plaintiff, which is required to prove the first possibility. Proving the second possibility requires proof only that the number was on the Defendant's IDNC already but was called anyway. As the *Robison* Court explained:

> Ms. Robison has standing. There is no requirement in Section 227(c) or in Section 64.1200(d) that the plaintiff be on the National Do-Not-Call Registry or the company's internal list before she can sue. The Defendants quote the wrong provision in arguing that there is such a requirement. . . . Ms. Robison is suing for alleged violations of Section 64.1200(d)(4), a provision with no Do-Not-Call List prerequisite.
>
> There would be two problems if the plaintiff had to be on the company's Do-Not-Call List before bringing a lawsuit. First, if that were so, there would seldom be anything over which to sue, as the company would have presumably ceased all communications with the plaintiff after the plaintiff opted out. Second, if a telemarketing text message lacked any identifying information (and thus violated Section 64.1200(d)(4)), the recipient would be unable to figure out how to opt out of receiving future messages, and all the while the mysterious telemarketer could continue bombarding the consumer with spam texts with no fear of legal reprisal. Such a holding would thwart Section 64.1200(d)(4), which is meant to aid consumers in stopping unwanted telemarketing calls and texts. . . . Despite having not opted out beforehand, Ms. Robison can still sue under Section 64.1200(d)(4).

*Id.*

To be fair, this Court in *Luckau* rejected the *Robison* court's reasoning, but on the facts of that case. In *Luckau*, the Court held that the plaintiff lacked Article III standing because the plaintiff never made an IDNC request and the messages identified SunRun, meaning that the plaintiff would have been able to do so. Any

MOTION TO AMEND
*Banks v. SunRun Inc.*
-3-

alleged noncompliance with Section 64.1200(d)(4) did not leave the plaintiff unable to determine how to make a stop request. *Luckau v. Sunrun, Inc.*, No. 25-CV-01661-JST, 2025 WL 2780784, at *1 (N.D. Cal. Sept. 30, 2025).

By contrast to *Luckau*, Plaintiff here would have standing, since her allegation, which must be treated as true both at the Amendment and Motion to Dismiss stage, is that her number was on SunRun's IDNC list as of July 14, 2024, but was called anyway. As this Court recognized in *Luckau*, Section 64.1200(d)(4) requires an entity to maintain minimum procedures for maintaining an IDNC. Minimally, that includes *actually using* the IDNC, since it would be pointless to maintain an IDNC if a telemarketer could simply maintain one without using it to suppress the sending of calls. As such, the Plaintiff plainly has Article III standing under the Amended Complaint because she suffered a violation of the precise right that the regulation is designed to remedy: calls a company makes to a number *that is actually and demonstrably on its IDNC*.

SunRun's Opposition addresses only the first theory, failure to honor an IDNC request, while ignoring the second, calling a number already on its IDNC, entirely. Distilled down to its essence, *Luckau* was devoid of allegations that the plaintiff's number was ever on SunRun's IDNC. Plaintiff here plausibly alleges that her number was on the IDNC but was called anyway. Here, it is readily apparent from SunRun's own records that Plaintiff's telephone number was placed on SunRun's

internal do-not-call list on or about July 15, 2024, and Plaintiff has alleged as much. The relevant records reflect a disposition of "DO_NOT_CALL" with a timestamp of "2024-07-15 15:25:27." SunRun then continued to call Plaintiff's number through August 2024, more than 30 days after the number had been dispositioned as do-not-call. Under *Robison*, that is sufficient. Plaintiff has alleged that her number was on SunRun's IDNC but got calls anyway, which is one of the harms that Section 64.1200(d)(4) is designed to remedy. Section 64.1200(d)(4) can be violated by calling a number already on a company's company-specific IDNC, regardless of how it got on that list in the first place.

This also comports with a basic understanding of the law of TCPA consent. TCPA consent may be revoked "at any time" and "through any reasonable means." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, Declaratory Ruling and Order, 30 FCC Rcd 7961, 7993-99, paras. 55-70 (2015). As a result, a consumer "may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept." *Id.* at 7998-99, para 70. Given that a customer need not prove the method of revocation and given that the regulation prohibits making calls to a number on

an IDNC as an initial matter, how precisely a number was placed on the IDNC is an irrelevant question that has no bearing on standing for the cause of action.

*Luckau* and the other cases Defendant cites, including *Perrong*, *Thompson*, and *Doan*, all involved plaintiffs who had *never been placed on the defendant's IDNC list at all*, mostly because they had never asked. Here, the opposite is true. Plaintiff alleges that SunRun's own records show that the Plaintiff's number was on its IDNC list as of July 15, 2024. The question of how the number got on the list is irrelevant. What is relevant is why SunRun continued to call it after recording a "DO_NOT_CALL" disposition, and this is precisely the type of factual inquiry that discovery is designed to resolve.

Moreover, even if the Court were to credit SunRun's standing argument, a lack of standing is a curable deficiency. A complaint cannot be dismissed with prejudice for lack of standing. *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1106 (9th Cir. 2006) (holding that dismissal based on lack of standing must be without prejudice). If SunRun contends that Plaintiff never herself requested to be placed on its IDNC list, then discovery will be needed to determine how and why Plaintiff's number was dispositioned as "DO_NOT_CALL" on July 15, 2024, and further as to why the Plaintiff was called anyway.

That is all the more reason to permit the amendment and allow the claim to proceed to discovery, not to foreclose it at the pleading stage. Plaintiff's number

had to have gotten dispositioned as "DO_NOT_CALL" somehow. If SunRun contends the Plaintiff never made a request, then SunRun must explain why its own system recorded the disposition it did. Moreover, simply because Plaintiff does not currently have written evidence that she made such a request on July 15, 2024 that does not mean that she did not make such a request. Plaintiff's counsel had chicken parmesan for dinner last night. That he maintains no records of that fact after putting his dishes in the dishwasher does not alter that fact. Plaintiff's proposed amendment is therefore not futile.

### B. SunRun's "misunderstanding" argument is a factual dispute for discovery, not a basis on which to deny amendment.

SunRun's second argument fares no better. SunRun contends that Plaintiff's reading of its call records is based on a "misunderstanding or misreading." (Agualo Decl. ¶ 14.) But this is precisely why discovery exists and precisely why courts do not resolve evidentiary disputes on a motion to amend. The question at this stage is whether the proposed claim is clearly futile, not whether SunRun disagrees with Plaintiff's interpretation of the evidence.

The Agualo Declaration is telling in what it does not say. It asserts in conclusory fashion that the "DO_NOT_CALL" disposition reflected in SunRun's records on "July 15, 2024" is "not factually accurate and appears to be based on a misunderstanding or misreading of SunRun's call records." (Agualo Decl. ¶ 14.)

But Ms. Agualo does not explain why this is the case. She does not explain what the "DO_NOT_CALL" disposition means if it does not mean what it plainly says. She does not explain why a document bearing a date and the words "DO_NOT_CALL" beside it should be read to mean anything other than what those words convey. She simply asserts, without elaboration, that the Plaintiff's reading is wrong. That is a baseless conclusory statement, not evidence.

To the extent SunRun believes its records show something other than what they plainly say, it can make that argument to a jury, and the jury can decide for itself whether SunRun's records mean what they say and say what they mean when the entry reads "2024-07-15 15:25:27" and the "type" field beside it says "DO_NOT_CALL." It is becoming readily apparent that this dispute is being teed up for a factfinder to determine whose "understanding" of a document, a document with a date and "DO_NOT_CALL" beside it, is correct, and what possible explanation exists for such a disposition if not that the number was, in fact, placed (or should have been placed) on SunRun's IDNC, as the Plaintiff desired.

Critically, SunRun has compounded this problem by refusing to produce certain individuals for deposition, despite now claiming in its opposition that the Plaintiff should have deposed someone as to the plain meaning of the document it produced. If SunRun's records allegedly do not mean what they say, SunRun will have every opportunity to explain that to a jury. SunRun should not be able to deny

MOTION TO AMEND
*Banks v. SunRun Inc.*
-8-

Plaintiff's motion *for an amendment* on the basis of an unexplained, conclusory assertion that SunRun admits requires discovery and evidentiary determination.

The standard for futility is not whether SunRun disagrees with Plaintiff's evidence. The standard is whether "*no set of facts* could be alleged or proved to support the claim." *Beckway v. DeShong*, No. C07-5072 TEH, 2010 WL 3768375, at *2 (N.D. Cal. Sept. 22, 2010) (emphasis added). Here, Plaintiff has alleged a plausible set of facts, supported by SunRun's own records, that support the proposed additional claim. That SunRun offers a competing interpretation of its own records does not render the claim futile. Rather, it confirms there is a genuine factual dispute that warrants discovery and, ultimately, resolution by a jury.

### C. Justice requires the amendment.

As set forth in Plaintiff's opening brief, and unaddressed by SunRun, all of the factors governing leave to amend weigh in Plaintiff's favor. Discovery has not closed. The class certification deadline has not passed. No trial date has been set. The amendment arises from the same operative facts and the same records already at issue in this litigation. There is no prejudice to SunRun, which produced the very records upon which the proposed claim is based. There is no bad faith or dilatory motive, as the Plaintiff is seeking to amend within the Court's deadline and in conformity with what she believes the evidence developed in discovery to show. And, as, demonstrated above, the proposed amendment is not futile.

MOTION TO AMEND
*Banks v. SunRun Inc.*
-9-

Denying leave would serve no purpose other than to force Plaintiff to dismiss and refile, alleging the very same claim based on the very same records, in a new action. That is the opposite of judicial economy. Rule 15's liberal amendment policy exists precisely to avoid such waste.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Plaintiff respectfully requests that the Court grant leave for the Plaintiff to file the Amended Complaint as the operative Complaint in this matter.

Dated: April 10, 2026              PLAINTIFF, individually and on behalf of all
                                   others similarly situated,


                                   Andrew Roman Perrong (*PHV*)
                                   a@perronglaw.com
                                   PERRONG LAW, LLC
                                   2657 Mount Carmel Avenue
                                   Glenside, Pennsylvania 19038
                                   Telephone: (215)225-5529 (CALL-LAW)
                                   Facsimile: (888)329-0305


                                   *Attorneys for Plaintiff and the Proposed
                                   Class*