**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice*)
Glenn T. Graham (SBN 338995)
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
ggraham@kelleydrye.com

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

PEGGY BANKS, individually and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

SUNRUN INC.

*Defendant.*

Case No. 4:24-cv-07877-JST

[Assigned to Hon. Jon S. Tigar]

**DEFENDANT SUNRUN INC.'S ADMINISTRATIVE MOTION TO CHANGE TIME AND AMEND SCHEDULING ORDER**

**[Declaration of Glenn T. Graham and [Proposed] Order filed concurrently herewith]**

Pursuant to Civil Local Rules 6-3 and 7-11 and Section K of the Court's Civil Standing Order, defendant Sunrun Inc. ("Sunrun") respectfully moves to amend the scheduling order. In light of recent developments, Sunrun seeks an approximately 85-day extension of the current schedule, including the upcoming September 29 summary judgment ("SJ") deadline, to allow time to pursue additional discovery, including third-party discovery if necessary, and thereafter file its SJ motion. The extension is also necessary to permit the parties to complete their meet-and-confer efforts and to present any resulting discovery disputes to the Court before SJ briefing begins. Last night, Plaintiff advised that she opposes Sunrun's request and will oppose providing the requested discovery. Sunrun will recommence the joint dispute letter process if Plaintiff does not reconsider.

## LEGAL STANDARD

Courts have broad discretion to grant extensions. *See Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir. 1996). Under Federal Rule of Civil Procedure 6(b)(1), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . ." This rule should be "liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258–59 (9th Cir. 2010). A request to change time "made before the applicable deadline has passed should normally be granted in the absence of bad faith or prejudice to the adverse party." *Id.* at 1259 (cleaned up).

## ARGUMENT

The critical issue in this TCPA class action is whether Plaintiff completed the web form seeking information about its solar products and services. Plaintiff submitted sworn statements asserting that she did not complete the form, while Sunrun's investigation suggests that she, or someone acting on her behalf, did. If the latter is true, Plaintiff's claims fail, and this case was brought based on a false factual premise.

As previewed at the August 21 case-management conference, developments in *Wilson v. Freeway Insurance Services of America, LLC*, No. 6:25-cv-01869-MC (D. Or.), another action brought by counsel representing Plaintiff here, prompted Sunrun to further investigate Plaintiff's denials about completing the webform and whether undisclosed persons held financial interests in, or exercised control over, this litigation. During proceedings in *Wilson v. Freeway*, the court stated

it was "quite frankly, concerned about whether criminal fraud is taking place." (Graham Decl. Ex. A. at 42:21–22.) Information recently uncovered casts substantial doubt on Plaintiff's sworn statement. It has further revealed that other counsel's pecuniary interest in this litigation was concealed, and, in fact, misrepresented.

Those financial interests, and the misrepresentations concerning them, call into question the veracity of other discovery provided. Plaintiff should not be permitted to benefit from her concealment of material facts, and discovery is necessary to determine who stands to benefit from this action and who may have participated in generating the claims or submitting the web forms. (Graham Decl. ¶¶ 21–40; Exs. B–F.) As such, an adjustment of the case schedule is necessary.

**Sunrun Needs Additional Discovery Regarding the Web-Form Submissions.** The issues raised in *Wilson,* which suggest that web forms used to generate TCPA claims may have been submitted by plaintiffs or persons acting on their behalf, prompted Sunrun to further investigate the origin of Plaintiff's claims. With an unrelated third party's permission, Sunrun's counsel compared the defendant's records from *Banks v. QuinStreet*, No. 3:25-cv-3071 (N.D. Cal.), another case involving Plaintiff (where she was represented by Paronich), to other web-form submissions appearing to be from Plaintiff. Those records show that on July 15, 2024, a webform submitting Plaintiff's information (the "QS Form")[1] originated from an IP address ending in 139 (the "139 IP Address"). As here, Plaintiff denied submitting the QS Form. Sunrun further determined that, minutes before the QS Form submission, a separate web form regarding solar services was submitted to Sunrun affiliate Clean Energy Experts, LLC from the same 139 IP Address containing Plaintiff's information. (Graham Decl. ¶ 34.) The web form at issue in this case, and on which Sunrun relied to place the calls at issue here, was submitted four days earlier on July 11, 2024, from an IP address sharing the same first seven digits as 139 IP Address, suggesting that all three forms originated from a household or network at or near Plaintiff's residence. (*Id.* ¶ 35.) That July 11 form was the only form submitted to Sunrun. (*Id.*) As in *QuinStreet*, Plaintiff denied submitting the form and provided sworn discovery responses asserting that she had never requested information about solar products or services. (*Id.* ¶¶ 33, 37.) But when confronted at her deposition with evidence showing that she

[1] The QS Form was not related to solar energy products or services.

had, in fact, submitted a webform seeking solar information, Plaintiff no longer denied submitting it, testifying instead that she did not recall whether she had done so. (*Id.* Ex. F Tr. 69:7–72:2.) That issue is material because Plaintiff's claims depend on her allegation that she never requested information about solar products or services and never completed a web form that resulted in the calls at issue. (ECF No. 1 ¶ 20.)

On September 18, 2026, only after Sunrun provided its portion of a discovery-dispute letter for submission to the Court, Plaintiff produced documents relating to her purchase of a *Turning Robocalls Into Cash* subscription and kit. (Graham Decl. ¶¶ 19, 36.) Notwithstanding that this information was responsive to already-pending discovery requests, Plaintiff had previously withheld those materials on purported privilege grounds yet provided no privilege log. Sunrun only learned of their existence at Plaintiff's deposition, yet Plaintiff continued to refuse production despite their clear relevancy to her claims. (*Id.* ¶ 20; Ex. F Tr. 98:1–100:25.) The materials instruct users how to profit from TCPA claims. (Graham Decl. ¶ 36.) Combined with the pattern of web-form submissions and other material facts that Plaintiff and her counsel failed to disclose, this evidence raises substantial questions regarding the veracity and origins of Plaintiff's claims. At a minimum, it warrants additional discovery into who submitted the web forms, whether Plaintiff knew of, directed, or participated in those submissions, and whether Plaintiff or persons acting on her behalf helped and/or were financially incentivized to generate the claims asserted in this action.

Sunrun therefore seeks a brief adjustment to the existing schedule to allow for additional discovery regarding: (a) whether the relevant IP addresses were assigned to, used by, or accessible to Plaintiff, members of her household, any device or account she used, or any person assisting her with TCPA claims; (b) whether Plaintiff, her counsel, or anyone acting in coordination with any of them completed, assisted with, directed, arranged, or had advance knowledge of any web-form submission using Plaintiff's identifying information; and (c) prior settlements involving Plaintiff and/or her counsel bearing on the financial incentive to generate TCPA claims.[2]

[2] The requested discovery is particularly warranted in light what occurred in *Wilson v. MAH Group, Inc.*, No. 6:25-cv-00855-MTK (D. Or.), wherein court records show that counsel involved here had vigorously denied that an opt-in IP address was associated with the plaintiff, but the plaintiff then was forced to admit that the IP address was in fact associated with him. *Wilson v. MAH Grp., Inc.*, No. 6:25-cv-00855-MTK, ECF Nos. 40 ¶ 4, 40-3 at 2; (Graham Decl. Ex. B.).

**Sunrun Needs Additional Discovery Regarding Counsels' Role and Financial Interests.** On September 18, 2026, Plaintiff produced a retainer agreement, but again did so only after Sunrun provided its portion of a discovery-dispute letter to be submitted to this Court. (Graham Decl. Ex. E.) That agreement reveals that material relationships and financial interests had been concealed from both Sunrun and the Court. Before suit was filed, Plaintiff executed a fee agreement retaining both Perrong Law LLC and Paronich Law, P.C. as counsel in this matter, providing that each firm would have an equal financial interest. (*Id.*) Yet Mr. Paronich, despite serving as counsel and possessing a direct pecuniary interest in the action, was neither disclosed as counsel of record nor identified pursuant to Local Rule 3-15 until September 10, 2026, *after* Sunrun raised the issue. Mr. Paronich is lead counsel in the related *Strickland* case and while Sunrun has reason to believe others (including Andrew Heidarpour) are involved there, no L.R. 3-15 disclosure was filed in that case.

These recently disclosed facts directly contradict specific statements made in Plaintiff's opposition to Sunrun's pleading-stage motion to strike the class allegations. (ECF No. 24.) That motion argued that the overlap between counsel here and *Strickland* raised a Rule 23 adequacy concern. At the time, the only known overlap concerned Dana Oliver, who appeared as counsel in both cases. Plaintiff responded by representing that "Mr. Oliver, the only overlapping counsel," was involved in both matters merely by coincidence as local counsel, had "no pecuniary interest," and had "no right to any portion of a class recovery." (ECF No. 24 at 15–17.) Plaintiff further represented that, "[a]part from Mr. Oliver," neither Mr. Perrong nor Plaintiff was involved in *Strickland*. (*Id.*)

Plaintiff's representations were false and misleading. Mr. Oliver was not "the only overlapping counsel." When those representations were made, Mr. Paronich, lead counsel in *Strickland*, was already co-counsel in this action under an agreement executed before suit was filed. Paronich Law also held a significant pecuniary interest this case. Thus, while Plaintiff told the Court otherwise, *Strickland*'s lead counsel was in fact co-counsel and held an equal financial interest in this action. That relationship went directly to the concerns raised by Sunrun, yet the relationship and pecuniary interest was concealed from Sunrun and the Court. In fact, Plaintiff affirmatively (and falsely) asserted that there was no overlap in counsel between this action and *Strickland*.

Plaintiff's testimony compounded the problem. When asked at her deposition on May 5, 2026 to identify the attorneys representing her in this case, Plaintiff did not identify Mr. Paronich, even though his firm had been co-counsel since before the action was filed. (Graham Decl. Ex. F; Tr. 8:21–24; 93:17–95:20.) The omission mirrors the false account previously presented to the Court and underscores the need for further discovery into the relationships, roles and financial interests among Plaintiff's counsel.

**The Belated Disclosures Remain Incomplete.** Despite promising to provide discovery concerning these arrangements, Plaintiff has not yet produced any documents addressing Mr. Oliver's role or financial interest. That includes any agreement involving Mr. Oliver individually, his firm, or the Heidarpour firm, with which Sunrun understands Mr. Oliver is affiliated. Sunrun cannot determine whether Mr. Oliver holds a financial interest directly, through his firm, through the Heidarpour firm, or otherwise. Nor can Sunrun test Plaintiff's prior representation that Mr. Oliver has "no pecuniary interest" without the underlying agreements and related nonprivileged communications. If no agreement exists, that raises additional questions regarding Mr. Oliver's role and the basis for Plaintiff's representations concerning his lack of a financial interest. (Graham Decl. ¶¶ 24–30.)

**The Additional Discovery Is Material, and Sunrun Acted Diligently.** Sunrun previously requested much of the information that it ultimately uncovered on its own. The Court should not ignore the increasingly suspicious circumstances presented here, which resemble the conduct that prompted judicial concern in *Wilson*. Unless Plaintiff changes course and cooperates, Sunrun intends to seek an order compelling discovery similar to that ordered in *Wilson*. Indeed, the facts uncovered to date only underscore the need for additional discovery. Sunrun respectfully requests the Court grant its motion to afford it additional time to complete this discovery. Alternatively, Sunrun requests the Court hold a status conference and suspend current deadlines pending that conference.

DATED: September 24, 2026

KELLEY DRYE & WARREN LLP

By: /s/ Glenn T. Graham
Glenn T. Graham

7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
ggraham@kelleydrye.com
*Attorneys for Defendant Sunrun Inc.*