**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice*)
Glenn T. Graham (SBN 338995)
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
ggraham@kelleydrye.com

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PEGGY BANKS, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>SUNRUN INC.<br>Defendant. | Case No. 4:24-cv-07877-JST<br>**DECLARATION OF GLENN T. GRAHAM IN SUPPORT OF DEFENDANT'S ADMINISTRATIVE MOTION TO CHANGE TIME AND AMEND SCHEDULING ORDER** |

I, Glenn T. Graham, declare:

1. I am an attorney duly licensed to practice law in the State of California and before this Court. I am a partner at the law firm of Kelley Drye & Warren LLP and counsel of record for Defendant Sunrun Inc. ("Sunrun") in the above-captioned action. I make this declaration based on my personal knowledge. If called as a witness, I could and would competently testify to the information stated herein.

**<u>Background Regarding *Wilson v. Freeway Insurance Services of America*</u>**

2. As Sunrun previewed at the August 21, 2026 case-management conference, developments that came to light in *Wilson v. Freeway Insurance Services of America, LLC*, No. 6:25-cv-01869-MC (D. Or.), another action brought by the counsel representing Plaintiff here, prompted Sunrun to further investigate both the origin of Plaintiff's claims and whether undisclosed persons or entities held financial interests in, or exercised control over, this litigation. (ECF No.

67.)

3. The conduct at issue in *Wilson v. Freeway* raised concerns that web-form submissions underlying TCPA claims may have been made by the plaintiffs themselves or financially interested persons acting on their behalf to improperly generate the claims; that putative class allegations were being used to leverage substantial individual settlements; and that attorneys and firms operating behind the scenes exercised undisclosed control over, or held undisclosed financial interests in, the claims. During proceedings in *Wilson v. Freeway*, the court stated it was "quite frankly, concerned about whether criminal fraud is taking place." (Ex. A. at 42:21–22.) A true and correct copy of the transcript from the August 19, 2026 hearing in the *Wilson v. Freeway* matter is attached hereto as **Exhibit A**.

4. The District consolidated the related *Wilson* actions, denied class certification, and authorized discovery into the origins of the claims, the web-form submissions at issue, and the roles and financial interests of persons and entities involved in the litigation.

5. Some of the conduct at issue in *Wilson v. Freeway* is described in the July 21, 2026 declaration of Ryan D. Watstein submitted in that action (the "Watstein Declaration"), which concerns attorneys involved in this litigation and the related case, *Strickland v. Sunrun*, No. 4:23-cv-05034-JST.

6. A true and correct copy of the Watstein Declaration, with its Exhibit 9, is attached hereto as **Exhibit B.**

7. One exhibit to the Watstein Declaration concerned another TCPA putative class action prosecuted by Andrew Perrong and Anthony Paronich. In that case, the defendant produced records showing that the plaintiff's telephone number had been entered into an online form from a particular IP address. Plaintiff's counsel expressly denied any connection between that IP address and their client, writing: "First, we've already indicated, but allow us to be clear, that is not our client's IP address." (Ex. B.) After the defendant served a request for admission, however, the plaintiff admitted that the same IP address had been assigned to him. (Ex. C.) The defendant asserted that this evidence contradicted material allegations in the complaint and raised questions

concerning who actually submitted the form underlying the TCPA claim. As set forth below, that case is presently stayed because of the District Court's Order pertaining to all of cases pending in the District of Oregon brought by Chet Wilson.

8. A significant portion of the conduct at issue in *Wilson v. Freeway* relates to Andrew Heidarpour and his law firm. A true and correct copy of the Order denying the Heidarpour Law Firm's motion to quash a subpoena in the *Wilson* matter is attached hereto as **Exhibit C**. As set forth below, local counsel in this case, Dana Oliver, is associated with or employed by the Heidarpour law firm. And, we have a strong basis to believe that Heidarpour is involved and has a financial interest in Strickland, notwithstanding that the plaintiff in that case failed to make the disclosure to this Court required by Local Rule 3-15.

9. Certain of the discovery Sunrun now seeks in this case substantially overlaps with the discovery authorized in *Wilson v. Freeway* and the related cases.

**Background Regarding The Need For Additional Discovery Here**

10. On May 4, 2026, the Court entered a stipulation and order amending the Scheduling Order in this case. (ECF No. 60.) Among other deadlines, the Scheduling Order set a discovery cut-off of August 14, 2026, and dispositive motion deadline of September 29, 2026.

11. On July 14, 2026, Sunrun served targeted discovery seeking, among other things, Plaintiff's engagement, referral and fee-sharing arrangements and information related to the origination of Plaintiff's claims in this case.

12. Plaintiff refused to respond, asserting boilerplate relevance and privilege objections in her August 14, 2026 written objections.

13. On September 1, 2026, counsel met and conferred regarding Plaintiff's deficient responses to Sunrun's supplemental discovery.

14. From September 1, 2026 through September 3, 2026, the parties further met and conferred via email, but Plaintiff's counsel ultimately advised Plaintiff intended to stand on her objections.

15. On September 9, 2026, Sunrun served Plaintiff's counsel with its portion of a joint

discovery dispute letter, which, among other things, outlined the relevance of the requested discovery. Sunrun also took the position that Plaintiff had no basis to refuse to disclose persons with a financial interest in the case, if any, because such disclosure was required by the local rules. A true and correct copy of the joint discovery dispute letter is attached hereto as **Exhibit D** (citing Civ. L.R. 3-15.) As of September 9, 2026, Plaintiff had not filed any certificate of interested parties in this case as required by Civ. L. R. 3-15.

16. On September 10, 2026, Plaintiff filed the L.R. 3-15 disclosure identifying Anthony Paronich of Paronich Law, P.C. Anthony Paronich is one of lead counsel in the related case *Strickland v. Sunrun* pending before this Court.

17. On September 11, 2026, Plaintiff's counsel also represented via email that Plaintiff would produce, by September 18, 2026, all engagement agreements "concerning Sunrun and the claims in this case, including with any referral attorney, local counsel, and/or any other attorney who otherwise has a financial interest in this case or has dealt with [Plaintiff] on her TCPA claims here . . . ."

18. Sunrun relied on this representation and refrained from filing a discovery dispute letter with the Court.

19. On September 18, 2026, Plaintiff produced (a) documents relating to her purchase of a *Turning Robocalls Into Cash* subscription and kit and (b) an engagement agreement with Ms. Banks naming Perrong Law and Paronich Law as co-counsel with equal fee interests. A true and correct copy of the engagement agreement is attached hereto as **Exhibit E**.

20. Plaintiff had previously withheld those materials on purported privilege grounds, despite providing no privilege log. Indeed, while the *Turning Robocalls Into Cash* materials were responsive to then-pending discovery requests, Plaintiff had not identified their existence and there is no apparent privilege that would cover such materials. Sunrun learned of the *Turning Robocalls Into Cash* materials only through Plaintiff's deposition, yet Plaintiff continued to refuse their production until Sunrun provided its discovery-dispute letter on September 9.

**Sunrun Needs Additional Discovery Regarding Counsel's Roles and Financial Interests**

21. Plaintiff's supplemental production raises serious questions regarding counsel's roles and financial interests in this litigation, as well as the accuracy of prior representations made to Sunrun and the Court.

22. For example, the recently disclosed facts directly contradict specific statements made in Plaintiff's opposition to Sunrun's pleading-stage motion to strike the class allegations. (ECF Nos. 17 and 24.)

23. The engagement agreement produced by Plaintiff shows that on October 31, 2024, less than two weeks before this action was filed, she executed a fee agreement retaining both Perrong Law LLC and Paronich Law, P.C. as counsel in this matter, providing that each firm would have an equal financial interest.

24. On January 27, 2025, Sunrun filed a Motion to Strike Class Allegations. That motion argued that the overlap between counsel here and *Strickland* raised a Rule 23 adequacy concern. At the time, the only known overlap concerned Dana Oliver, who appeared as counsel in both cases.

25. Plaintiff filed her opposition to that Motion on February 24, 2025. Plaintiff represented in her opposition that "Mr. Oliver, the only overlapping counsel," was involved in both matters merely by coincidence as local counsel, had "no pecuniary interest," and had "no right to any portion of a class recovery." (ECF No. 24 at 15–17.) Plaintiff further represented that, "[a]part from Mr. Oliver," neither Mr. Perrong nor Plaintiff was involved in *Strickland*. (*Id.*)

26. Mr. Oliver was not "the only overlapping counsel." When those representations were made, Mr. Paronich, lead counsel in *Strickland*, was already co-counsel in this action under an agreement executed before suit was filed. Paronich Law also held a significant pecuniary interest this case.

27. When asked at her deposition on May 5, 2026 to identify the attorneys representing her in this case, Plaintiff did not identify Mr. Paronich, even though his firm had been co-counsel since before the action was filed and held an equal fee interest. A true and correct copy of experts of the transcript of the deposition of Peggy Banks is attached hereto as **Exhibit F**.

28. The undisclosed overlap may extend further. Mr. Oliver is affiliated with or employed by the Heidarpour Law Firm, and Andrew Heidarpour and his firm appears to have an interest in *Strickland.* Indeed, Mr. Heidarpour has sent email correspondence purporting to represent Ms. Strickland in the case. Nevertheless, to date, no disclosure under Local Rule 3-15 identified Mr. Heidarpour or the Heidarpour Law Firm's role or financial interest in *Strickland,* or Mr. Oliver's affiliation with the firm.

29. Despite representing that she would produce all agreements relating to Plaintiff's counsel, referral counsel, and any attorney with a financial interest in the claims, Plaintiff has not produced any agreement or documents concerning Mr. Oliver's role or financial interest, including any agreement involving Mr. Oliver individually, his firm, or the Heidarpour Law Firm. Sunrun has requested all engagement agreements, referral agreements, fee-sharing agreements, and other documents reflecting financial interests in the claims, together with a privilege log and nonprivileged communications concerning referral arrangements, fee sharing, claim development, and litigation control.

30. Plaintiff's counsel advised us last night that Plaintiff is refusing to provide that discovery.

**<u>Sunrun Needs Additional Discovery Regarding the Web-Form Submissions</u>**

31. The issues raised in *Wilson* also prompted Sunrun to further investigate the veracity of Plaintiff's representations that she had never shopped for solar or completed a webform regarding solar. In *Wilson*, evidence emerged suggesting that web forms used to generate TCPA claims may have been submitted by plaintiffs or persons acting on their behalf despite allegations that the plaintiffs had never submitted the forms.

32. With permission from another client, our firm therefore examined other available web forms submitted using Plaintiff's identifying information.

33. Our firm previously represented the defendant in *Banks v. QuinStreet*, *Inc.*, No. 3:25-cv-3071 (N.D. Cal.). In that case, records showed a web form submitted on July 15, 2024, using Plaintiff's information (the "QS Form") from an IP address ending in 139 (the "139 IP Address").

Plaintiff denied submitting that form.

34. Records show that on July 15, 2024 a separate form web regarding solar was received by Sunrun affiliate Clean Energy Experts, LLC (the "CEE Form") from the same 139 IP Address, on the same date, and within minutes of the QS Form submission.

35. The web form at issue in this case, and on which Sunrun relied to place the calls at issue here, had been submitted on July 11, 2024, from an IP address sharing the same first seven digits as the July 15 submissions, suggesting that all three forms originated from the same household or network near where Plaintiff resided.

36. These forms were submitted around the time Plaintiff purchased her subscription to the *Turning Robocalls Into Cash* forum, about which Plaintiff produced records for the first time on September 18, 2026. These materials instruct users how to profit from TCPA claims.

37. This evidence raises substantial questions about the veracity of Plaintiff's sworn statements that she did not complete the web form at issue in this case, and warrants discovery into who submitted the forms, whether Plaintiff knew of or participated in those submissions, and whether Plaintiff or persons acting with, for, or in coordination with her helped generate the claims asserted here.

38. Sunrun therefore has raised with Plaintiff's counsel and sought to meet and confer regarding whether Plaintiff will provide information as to whether: (a) whether the relevant IP addresses were assigned to, used by, or accessible to Plaintiff, members of her household, any device or account she used, or any person assisting her with TCPA claims; (b) whether Plaintiff, her counsel, or anyone acting in coordination with any of them completed, assisted with, directed, arranged, or had advance knowledge of any web-form submission using Plaintiff's identifying information; and (c) prior settlements involving Plaintiff and/or her counsel bearing on the financial incentive to generate TCPA claims.

39. Notably, the pattern of overlapping IP addresses across web forms that generated TCPA lawsuits appears to have surfaced in *Strickland* as well. On July 27, 2023, prior to filing the complaint in *Strickland*, Mr. Heidarpour reached out to my colleague threatening to sue Sunrun on

behalf of Ms. Strickland. We responded that the calls about which Ms. Strickland complained were made because she had completed web forms requesting information and consenting to be called. Strickland was filed on October 1, 2023.

40. During the plaintiff's deposition in *Strickland*, it was discovered that the web forms at issue in that case were submitted from an IP address sharing six to seven digits with IP addresses associated with web forms that generated claims in another TCPA action, *Strickland v. MPX Insurance*, No. 9:23-cv-81305 (S.D. Fla.). Such a degree of overlap is significant because IP addresses sharing six to seven digits typically indicate use of the same internet service provider network and may suggest that the submissions originated from the same household, user, or small geographic area. My colleague raised these issues with the plaintiff's counsel in *Strickland*, who would not concede that the plaintiff or someone associated with her had completed the webform. Shortly after we raised these issues, but before Ms. Strickland's deposition could be completed, she unfortunately passed. The case has mostly been dormant since then.

**Sunrun Requested Plaintiff's Consent to Stipulate to the Relief Sought**

41. On September 21, 2026, I emailed Plaintiff's counsel about these persisting deficiencies and also requested a modification of the case management schedule so the Parties could resolve these deficiencies without Court intervention.

42. I followed up with Plaintiff's counsel again on September 22, 2026.

43. On September 23, 2026, Plaintiff's counsel advised that Plaintiff would not consent to a stipulation modifying the case management schedule.

**The Discovery Sought Is Material, and Sunrun Acted Diligently**

44. The issues described herein and in the accompanying motion are central to this case.

45. The web-form evidence bears directly on whether Plaintiff requested information about solar products or services, consented to the calls at issue, and has a viable TCPA claim. The newly disclosed counsel relationships and financial interests likewise bear directly on the Rule 23 concerns Sunrun raised at the pleading stage and Plaintiff and counsel's credibility.

46. Sunrun could not meaningfully explore these issues earlier because it lacked any

reason to distrust Plaintiff's and counsel's sworn discovery responses and/or representations, absent contrary evidence, which emerged only in recent weeks.

47. The requested discovery is targeted and proportional. It addresses issues that arose only after Sunrun obtained information giving it reason to question representations it previously had no basis to distrust. The discovery will permit the merits, credibility, and Rule 23 issues to be resolved on a complete and accurate record.

**Prior Discovery Extensions**

48. The Parties previously stipulated to a 14-day extension of Sunrun's time to respond to the Complaint (ECF No. 13).

49. The Parties previously stipulated to amend the scheduling order (ECF No. 44), which was so-ordered on October 2, 2025 (ECF No. 45).

50. The Parties previously stipulated to amend the scheduling order (ECF No. 46), which was so-ordered on November 18, 2025 (ECF No. 48).

51. The Parties previously stipulated to amend the scheduling order (ECF No. 51), which was so-ordered on February 23, 2026 (ECF No. 52).

52. The Parties previously stipulated to amend the scheduling order (ECF No. 59), which was so-ordered on May 5, 2026 (ECF No. 60).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 23, 2026, in Madison, New Jersey.

By: */s/ Glenn T. Graham*
Glenn T. Graham