P. PERRONG LAW LLC

**2657 Mount Carmel Avenue**
**Glenside, PA 19038**

a@perronglaw.com Tel. (215) 225-5529 (CALL-LAW)
www.perronglaw.com Fax (888) 329-0305

September 23, 2026

*VIA E-MAIL*

Glenn T. Graham
Kelley Drye & Warren LLP
7 Giralda Farms, Suite 340
Madison, NJ 07940

Re: Your E-Mail of September 21, 2026
*Banks v. Sunrun Inc.*, No. 4:24-cv-07877-JST (N.D. Cal.)

Mr. Graham:

We write in response to your e-mail, sent after close of business on September 21, 2026, in which Sunrun (1) asks Plaintiff to agree to a 90-day extension of the case schedule, (2) demands that Plaintiff withdraw her class allegations, and (3) sets out, by e-mail and after the close of fact discovery, ten categories of interrogatories, document requests, a proposed forensic examination of Ms. Banks's devices, and related demands. We have reviewed your e-mail, and the allegations in it, carefully and with our client. Plaintiff declines each request. Plaintiff will not agree to an extension, will not withdraw her class allegations, and will not respond to discovery demands served by e-mail after discovery has closed. Plaintiff will oppose any motion to extend the schedule and will respond to any motion for summary judgment Sunrun files on the schedule the Court has already set.

As an initial matter, the information your e-mail describes is not new. Sunrun has asserted consent as a defense since the outset of this case, and Plaintiff's first set of interrogatories asked Sunrun to state all facts supporting that contention and to identify the dates on which, and the means by which, consent was supposedly obtained. In its verified, amended response served on July 7, 2026, Sunrun identified exactly one lead: the July 11, 2024 NXTLVL submission, supported by the Jornaya report. As a result, the Plaintiff then undertook third party discovery on NXTLVL. Sunrun never supplemented that response to identify the July 15, 2024 or March 6, 2025 submissions as a basis for its defense, never disclosed the IP addresses

associated with them, and never identified any QuinStreet submission at all. We further point out your admission that both such purportedly newly discovered submissions "did not result in a call by CEE or Sunrun," and thus, by admission, are not only irrelevant to the claims or defenses in this case, but also post-date the calls Plaintiff received and in the case of the March 2025 submission, by almost a year. Of course, it is well established that TCPA consent cannot be retroactively obtained.

Despite SunRun relying on a single IP address and single NXTLVL lead during the entire pendency of this litigation, we further note that multiple purported submissions appear on the face of Sunrun's own lead log, which Sunrun produced long ago. Moreover, the one Jornaya report Sunrun did produce for the purported NXTLVL lead was, by its own terms, prepared for Clean Energy Experts, the very entity whose records your e-mail now presents as a new development.[1] Indeed, Sunrun's own verified responses to Plaintiff's Second Set of Interrogatories expressly discuss the July 15, 2024 and March 6, 2025 leads received by Clean Energy Experts. In short, any additional purported submissions, and the means of retrieving their data, have been within Sunrun's possession, custody, or control since the leads were received, which is, in the case of the July 2024 submissions, more than two years. Nothing about them was discovered after the close of discovery. Rather, SunRun simply never elected to disclose them or the fact that it now intends to rely on them until after the close of discovery and on the precipice of an anticipated motion for summary judgment.[2]

Nor can the timing be attributed to Plaintiff's September 18, 2026 supplemental responses and production, as your email seems to intimate. That production consists of materials responsive to Sunrun's requests concerning the robocalls.cash forum and the Plaintiff's attorney-client agreement. Your e-mail does not explain, and we cannot discern, how anything in those materials could have led Sunrun to IP addresses and purported webform records sitting in its own and its affiliate's lead systems, or to records held by QuinStreet, a third party. The supplemental production has no bearing on the submissions described in your e-mail.

We also cannot overlook the context in which this request arrives. Plaintiff previously proposed an adjustment to the case schedule well prior to the close of discovery, and Sunrun declined. Plaintiff then did what the Rules contemplate. She pursued the consent evidence from its source and obtained an order compelling NXTLVL, the lead

---

[1] Your e-mail describes Clean Energy Experts as a Sunrun "affiliate"; Sunrun's verified interrogatory responses describe it as a "former subsidiary" that used the same Zeus lead platform as Sunrun. Either way, Sunrun's Telemarketing Compliance Policy, produced in this case, applies to both Sunrun and Clean Energy Experts, and Clean Energy Experts' lead records have at all times been within Sunrun's control.

[2] We further note that Sunrun was apparently able to obtain QuinStreet's authorization to share QuinStreet's records concerning Ms. Banks informally, yet never sought those records by subpoena during discovery or disclosed them. Ms. Banks's resolution of other matters has no bearing on whether Sunrun obtained her consent to the calls at issue here.

vendor on which Sunrun's consent defense rests, to produce its consent data from the United States District Court for the Eastern District of Pennsylvania. NXTLVL has not complied with that order. Sunrun bears the burden of proving consent with admissible evidence, and its summary judgment motion is due September 29. Indeed, the morning of September 21, 2026, you sent us correspondence on the very same email thread seeking to ascertain whether we intended to cross-move for summary judgment. It is only now, with discovery closed, NXTLVL in noncompliance with a court order, and summary judgment days away, that Sunrun has come forward with purportedly new theories of consent, new IP addresses, and a request for three more months of discovery. Respectfully, the need for additional time is a product of Sunrun's own choices, not of any new development.

The governing standards reflect exactly that. A scheduling order may be modified only for good cause, and the good cause inquiry focuses primarily on the diligence of the party seeking the modification; "[i]f that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Sunrun cannot show diligence with respect to information that has been in its own records throughout this case, nor with the fact that it relied on a single NXTLVL lead originating from a single IP address throughout the pendency of this litigation. A party that fails to provide information as required by Rule 26(a) or (e) may not use that information on a motion or at trial unless the failure was substantially justified or harmless, a sanction the Ninth Circuit has described as "self-executing" and "automatic." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Plaintiff reserves the right to seek exclusion of any evidence or any argument concerning the July 15, 2024 and March 6, 2025 submissions, the QuinStreet submission, and the associated IP addresses. This is notwithstanding the fact that retroactive consent is neither relevant nor proportional.

Although Plaintiff is not obligated to respond to, and is not responding to, the interrogatories in your e-mail, we did review the allegations with our client, as we have throughout this case. Ms. Banks has confirmed that none of the three IP addresses is hers, her household's, or associated with any device or account she has used, and that she did not submit, direct, or have any knowledge of any of the webform submissions your e-mail describes. That is entirely consistent with her sworn testimony and the record. Ms. Banks testified that her cellular service has been with AT&T for as long as she has had a cell phone, and that her home internet service is provided by Spectrum. The IP addresses proffered in your email belong to Verizon and Comcast, internet providers the Plaintiff has not used, and, in the case of the latter two purportedly newly discovered submissions, originate from San Francisco, where the Plaintiff was nowhere near on the dates at issue. What's more, the fact that the July 11 and July 15 addresses share their first six digits does not suggest that they originated with Ms. Banks. In fact, the block 174.218.86 is associated with Verizon, and the block 174.218.81 is associated with Comcast and thus plausibly could *not* have originated from the same submitter, or even a legitimate one.

We have already outlined the other issues with the purported consent data associated with the July 11, 2024 lead already and will reserve further briefing for a jury trial, to the extent it is admitted at all. But suffice it to say that Ms. Banks disputes that the lead was ever submitted by her, including because it bears multiple indicia of unreliability, not least of which because the mailing address is simply the main address for an RV park at which Ms. Banks had not lived for multiple years. As such, it would make little sense for Ms. Banks to seek out residential solar quotes as an initial matter, let alone to do so three separate times over an eight-month span from three different IP addresses, none of which belongs to any carrier she uses, and at least once after she told SunRun in writing that she did not want to be contacted.

The remaining demands in your e-mail are not new either. Sunrun had every opportunity to pursue the subjects you raise during discovery, and it did pursue several of them, including through its requests for Ms. Banks's devices, its requests concerning her other matters, and its examination of Ms. Banks at her deposition. Plaintiff provided formal responses to those requests and supplemented some of them. The relevance of these subjects to whether Sunrun obtained Ms. Banks's consent is doubtful at best, but in any event the time to serve further discovery has passed. The Federal Rules do not provide for a party to reopen fact discovery by e-mailing opposing counsel a list of interrogatories and document requests that it wishes it would have pursued after the deadline, and Plaintiff will not litigate this case, or exchange discovery, by e-mail.[3]

With respect to preservation, Plaintiff is aware of and has complied with her obligations. We trust that Sunrun and Clean Energy Experts have done the same, including with respect to all records reflecting when, how, and by whom the July 15, 2024, March 6, 2025, and QuinStreet submissions and the associated IP data were first identified, retrieved, or discussed, and all communications with QuinStreet, NXTLVL, and Jornaya concerning Ms. Banks. To the extent the Court permits any further discovery, Plaintiff intends to explore the circumstances of Sunrun's purportedly new discovery of this information, including when Sunrun first possessed it and why it was not disclosed.

Plaintiff likewise will not withdraw her class allegations. Nothing in your e-mail implicates a purportedly individual question in this case. Sunrun's purported consent defense, as disclosed in discovery, rests on leads obtained through a vendor that is in contempt of a court order and which has not responded to third party discovery. That issue is common to the class, and we have successfully certified classes and defeated summary judgment in the face of similar consent defenses and circumstances before. Your e-mail also refers to prior representations to the Court in opposition to Sunrun's motion to strike, but it does not identify any representation that is inconsistent with anything above. We have again reviewed our opposition, and we are aware of none.

[3] To the extent your e-mail requests confirmation regarding privilege logs and supplementation, Plaintiff has confirmed that she is complying with her discovery obligations.

To be clear, Plaintiff will not agree to extend the case schedule and will oppose any motion to do so. Plaintiff will respond to Sunrun's motion for summary judgment, including any argument concerning consent, on the schedule the Court has set and on the record developed in discovery. Should Sunrun elect to file a motion to extend the schedule or reopen discovery, we ask that it attach this letter in full.

We remain available to meet and confer regarding any motion Sunrun intends to file.

Very Truly Yours,

Andrew R. Perrong, Esq.