# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF CALIFORNIA

* * * * * * * *

| | | |
|---|---|---|
| PEGGY BANKS, | * | |
| individually and | * | |
| on behalf of all | * | |
| others similarly | * | |
| situated, | * | |
| Plaintiff | * | Case No. |
| vs. | * | 4:24-cv-074877- |
| SUNRUN INC., | * | JST |
| Defendant | * | |

* * * * * * * *

DEPOSITION OF
CHRISTINE AGUALO
August 13, 2026

Any reproduction of this transcript is
prohibited without authorization by
the certifying agency.

DEPOSITION
OF

CHRISTINE AGUALO, taken on behalf of the Plaintiff herein, pursuant to the Rules of Civil Procedure, taken before me, the undersigned, Zachary Petrosky, a Court Reporter and Notary Public in and for the Commonwealth of Pennsylvania, virtually, on Thursday, August 13, 2026 beginning at 12:00 p.m.



A P P E A R A N C E S

ANDREW ROMAN PERRONG, ESQUIRE
Perrong Law, LLC
1669 Edgewood Road
Suite 218
Yardley, PA 19067
COUNSEL FOR PLAINTIFF

GLENN GRAHAM, ESQUIRE
Kelly Drye & Warren, LLP
350 South Grand Avenue
Suite 3800
Los Angeles, CA 90071
COUNSEL FOR DEFENDANT



I N D E X


WITNESS: CHRISTINE AGUALO
EXAMINATION
By Attorney Perrong 7 - 186
DISCUSSION AMONG PARTIES 186 - 189
CERTIFICATE 190




EXHIBIT PAGE


| NUMBER | DESCRIPTION | PAGE IDENTIFIED |
|---|---|---|
| 1 | Sunrun Pl | 10 |
| 2 | Sunrun-PB-000068 | 16 |
| 3 | Sunrun-PB-000067 | 24 |
| 4 | Declaration | 44 |
| 5 | Request for Admission | 61 |
| 6 | Compliance Policy | 113 |
| 7 | Sunrun-PB-000066 | 121 |
| 8 | Web Form | 130 |
| 9 | Jornaya Lead | 147 |
| 10 | Paused Integration | 152 |
| 11 | Sunrun PB-000959 | 160 |
| 12 | Amended Procedure | 178 |

**Q. I have some more questions on this document.**
**Do you recognize the start name field? Or start date field, I'm sorry.**
A. Start date?
**Q. Yes.**
A. I see that.
**Q. What does that mean?**
A. Start date, that is the date that that particular call was placed.
**Q. Start time?**
A. The time of the call.
**Q. What is contact name?**
A. The telephone number that was dialed.
**Q. What is any dial num.**
A. This is going to be the --- essentially the indicator for the, I guess like list that was dialed.
**Q. So this is not the telephone number that would appear on a person's caller ID?**
A. No.
**Q. Where were --- where is the**



**telephone number that would appear on the person's caller ID located?**
ATTORNEY GRAHAM:
Objection to the form.
THE WITNESS:
Do I answer?
ATTORNEY GRAHAM:
You can answer.
THE WITNESS:
Okay.
ATTORNEY GRAHAM:
If I object to form Christine, in general, you can answer.
THE WITNESS:
Okay. Okay.
ATTORNEY GRAHAM:
Unless I tell you not to answer.
THE WITNESS:
So the telephone number that appears on caller ID is not listed on this call log.
BY ATTORNEY PERRONG:
**Q. Where would that information be**



**found?**
A. That I could not speak to. That's not information that I personally have access to. I'm sure it would involve a report.
**Q. What is disp name?**
A. Column F, that is the disposition that was used for the call.
**Q. Does a human select this disposition?**
A. Yes.
**Q. Why does the disposition change from no answer VM content to call non-final to answering machine on --- it appears July 25th, 2024?**
A. So when dialing we have --- or at that time there was what was called answering machine detection and when answering machine detection is turned on it will detect that an answering machine has picked up and give the agent essentially like a pop up letting them know that an answering machine has picked up and so they can



disposition that way very quickly to move on to their next call. If answering machine detection is turned off they wouldn't get that advance notice, that pop up and so they would use the no answer, voicemail, continue to call final disposition inContact.
**Q. Why would --- was answering machine detection turned on on sometime between July 19th and July 25th?**
A. Appears that way. Looking at this, yes.
**Q. Who would have information as to whether or not that answering machine detection was turned on?**
A. Our tech team.
**Q. Who on the tech team?**
A. For this specifically, that would be most likely Eugenio is his name.
**Q. Oh, do you know his last name?**
A. I could look it up.
**Q. That's fine.**
A. I believe it's something like

that pot --- that vendor.
**Q. And the vendor is the agency in the following field?**
A. Correct.
**Q. What is run: NXT LVL LLC as opposed to NXT LVL LLC?**
A. The one on line three that has run is a Sunrun exclusive lead. So that one was only sent to Sunrun versus the other two that potentially were sent to other --- other companies as well.
**Q. What is Campaign ID?**
A. Campaign ID. Let me open it up here. Campaign ID is just going to be the number, the identification number for that specific campaign.
**Q. And what is --- what are the two campaigns listed here?**
A. Next Level. And then the Sunrun Exclusive Next level.
**Q. What does alt pricing mean?**
A. I couldn't say.
**Q. IP address is blank?**
A. Looks that way, yes.



**Q. First name is the same for all these and it's Peggy?**
A. Yes.
**Q. Last name --- and it's B --- one lead says B-N-A-K-S.**
**Do you see that?**
A. Yes. The Sunrun Exclusive.
**Q. And then the other one has the correct spelling, B-A-N-K-S?**
A. Yes, I see that.
**Q. The email addresses differ as well?**
A. Let me make it a little bit bigger. Yep. Looks like the Sunrun Exclusive is different.
**Q. Under type, what does type mean?**
A. Type is going to be the action that Zeus took when it received that lead.
**Q. What is an action that Zeus takes?**
A. Well, for example, on here, sold, meaning it --- everything --- compliance tokens checked out on the



lead. It wasn't actively being called on. It wasn't in our internal do not call list. So it was pushed through to the dialer to be called on.
**Q. And the dialer is the inContact dialer?**
A. Correct.
**Q. And then when there's a type that says do not call, what does that mean?**
A. That means Zeus has flagged it to not be called.
**Q. Okay.**
**So --- and Zeus, remind me about what Zeus is.**
A. Zeus is the system that's used to house the lead submissions, the inquiries and check for compliance tokens.
**Q. Okay.**
**When Zeus --- let's back up.**
**Why would Zeus mark the lead on --- in line four as a do not call?**
A. So the 1715 submission that came through to C-E-E looks like it



was tagged do not call because it was actively being called on by Sunrun from the 7/11 submission. There's a 21-day rule. It's actively being called on in the past 21 days. Then any new lead submission is going to get tagged this way so that we're not double dialing.
**Q. And where is that machine logic reflected in this document?**
ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:
I'm sorry, can you repeat your question or clarify a little bit?
BY ATTORNEY PERRONG:
**Q. Yeah. You just testified that this number in line four was dispositioned as do not call because it was already being actively dialed. How do you know that that's why Zeus dispositioned this lead as do not call?**
A. Well, there --- because I can

30

see that four days prior we had a submission for the same person so it would fall under our 21 day rule.
**Q. So that's just your guess as to why, you don't have any documents from Zeus reflecting why this was dispositioned as do not call?**
ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:
I personally do not have any documents, no.
BY ATTORNEY PERRONG:
**Q. And line two, why was that dispositioned as do not call?**
A. The one in March, that lead submission came through after we had received notification to put Ms. Banks on our do not call list. So she was at that time on our internal do not call list and it was flagged.
**Q. And Zeus also marked that as a do not call?**
A. Yeah. So there's a few instances that Zeus would flag

31

something that way. If they are on our internal do not call list, they'll flag it. If it's within the 21 days it will flag it and it also will flag phone numbers that come through on a known litigator list.
**Q. Is Ms. Banks on such a known litigator list?**
ATTORNEY GRAHAM:
Objection to the extent that this is outside the scope of the topics. To the extent you know you can answer, Christine.
THE WITNESS:
I could not say for sure.
BY ATTORNEY PERRONG:
**Q. What known litigator lists does Sunrun use?**
ATTORNEY GRAHAM:
Objection as outside the scope of the topics for this witness.
THE WITNESS:

32

I'm not sure.
BY ATTORNEY PERRONG:
**Q. Who makes Zeus?**
ATTORNEY GRAHAM:
Outside of the scope. But you can answer to the extent you know, Christine.
THE WITNESS:
Yeah. I don't know who built Zeus, who created Zeus? Zeus was here long before I was. I think primarily there's an individual by the name of Juan Pablo who is responsible for maintaining Zeus.
BY ATTORNEY PERRONG:
**Q. And Zeus is a Sunrun internal system. It's not like a commercial program?**
A. Correct.
**Q. What does unique ID mean?**
A. Hold on, let me scooch over here. Unique ID is the ID number assigned to a lead by Zeus.
**Q. And what is underscore lead ID?**

33

A. Lead ID is going to be similar. An ID used to tag that specific inquiry.
**Q. And the lead ID compliance?**
A. This is indicating whether or not the proper compliance tokens came with the lead.
**Q. How is that lead ID compliance run? What does Zeus do to ensure that the lead ID compliance is fully compliant?**
A. All of our submissions that come through, all of our vendors are required to supply a Jornaya report with the submission that has a playback of the submission and the consent language that was agreed to when submitting it.
**Q. What is lead ID issues?**
A. I couldn't say for sure, but just based off of the title, I can make an assumption.
**Q. What's that assumption?**
A. That there were no issues with the lead ID.

I have personal knowledge of our policies and procedures. I wouldn't say that I have no personal knowledge.
BY ATTORNEY PERRONG:
**Q. I want to ask you about paragraph 14 of that declaration.**
A. Let me scroll down. Okay.
**Q. Can you read that sentence?**
A. Understand Plaintiff alleges that Sunrun dispositioned the 909 number as do not call on July 15th, 2024. This is not factually accurate and appears to be based on a misunderstanding or misreading of Sunrun's call records.
**Q. What are the facts for which you made that declaration --- that statement under penalty of perjury?**
A. So reviewing the --- let me get it pulled back up here. The lead log, July 15th. Ms. Banks was not put on our internal do not call list on July 15th. On July 15th, we received a



second inquiry. And that was marked to not call on. The number was not put on the do not call list. It's just marked this lead, this inquiry is not fit to go into the call log to be dialed.
**Q. Did you review Sunrun's do not call list?**
A. The internal do not call list?
**Q. Yes.**
A. No.
**Q. Did you review the date that Ms. Banks was added to Sunrun's do not call list?**
A. Ms. Banks, if my memory serves correctly, was added to our do not call list shortly after the letter was received. So that wouldn't have been until, I believe, September. I don't remember the actual date, though.
**Q. Can you read your paragraph 15?**
A. Sunrun did not place the 909 number on its internal do not call list until after receiving correspondence from Plaintiff on or



about August 30th, 2024, because Plaintiff did not previously make a stop request or otherwise request to be placed on Sunrun's internal do not call list.
ATTORNEY PERRONG:
Could the court reporter please read the previous testimony of when I asked Ms. Agualo whether or not she received the do not call list and her answer? Review the do not call list and her answer?
---
(WHEREUPON, COURT REPORTER READ BACK QUESTION.)
---
BY ATTORNEY PERRONG:
**Q. So are you lying then or are you lying now?**
ATTORNEY GRAHAM:
Objection to form. Argumentative. Also mischaracterizing answers.
THE WITNESS:



I wasn't lying then, and I'm not lying now.
BY ATTORNEY PERRONG:
**Q. When did you review the do not call list?**
ATTORNEY GRAHAM:
Objection to form, asked and answered.
THE WITNESS:
I personally did not review Sunrun's internal do not call list.
BY ATTORNEY PERRONG:
**Q. And yet you made a statement in a sworn declaration as to what --- when Sunrun placed a number on the internal do call list without personal knowledge. Right?**
ATTORNEY GRAHAM:
Objection to form. And mischaracterizing the testimony. And misreading or misunderstanding paragraph 15.
THE WITNESS:

THE WITNESS:
The answering machine disposition is a disposition left by an agent. When they get the answering machine, that specific disposition is essentially a pop up through the inContact dialer. It wasn't automatically left by the inContact dialer if that's what you're asking. Sorry.
BY ATTORNEY PERRONG:
**Q. I'm not. Earlier we established that there's two sets of disposition codes with respect to the Plaintiff.**
**Right?**
A. Uh-huh (yes).
**Q. One says answering machine?**
A. Right.
**Q. One says no answer, VM, Cont to call non-final?**
A. Uh-huh (yes).
**Q. With respect to the answering machine disposition, how does that**



**differ from the no answer, VM, Cont to call non-final disposition?**
A. When the answering machine detection is turned on, if it detects an answering machine, it will flash a pop up to notify the advisor that it's connected to an answering machine and they can click that pop up to end that call quickly and move on to the next call.
**Q. Okay.**
**And when they click that, it dispositions as answering machine.**
**Right?**
**So when request for admission number six asks Sunrun to admit that each call reflected bearing the disposition answering machine connected to a voicemail or answering machine, why did Sunrun deny that?**
ATTORNEY GRAHAM:
Objection to the form and objection to the extent this seeks attorney-client privileged communications. To



the extent you could answer without divulging attorney-client communications, Christine, you could answer.
THE WITNESS:
I don't know how to answer that.
ATTORNEY GRAHAM:
Andy, can you rephrase the question?
BY ATTORNEY PERRONG:
**Q. Answering machine detection means that the phone --- that the inContact system detected an answering machine.**
**Right?**
A. Correct.
**Q. Request number six asks you to admit that the calls reflected that disposition were connected to an answering machine.**
**Right?**
ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:



When you say connected, does that mean that the answering machine was served to the rep, the rep heard the answering machine or connected that the automatic dialing --- or automatic voicemail detection detected it and then gave the pop up?
BY ATTORNEY PERRONG:
**Q. The latter. That the automatic voicemail detection system detected it and gave the pop up.**
A. Right, it did, but I can't say that that call connected to the agent.
**Q. But it connected through the public switch telephone network.**
**Right?**
ATTORNEY GRAHAM:
Objection to the form and objection to the extent that it's outside the scope on this witness's knowledge.
THE WITNESS:
I don't know what the

Thank you.
THE WITNESS:
Okay.
BY ATTORNEY PERRONG:
**Q. Under line K3 there is the type sold. What does sold mean?**
A. Sold would indicate that that lead submission made it through the Zeus check and was sent to the dialer.
**Q. What are the three Zeus checks?**
ATTORNEY GRAHAM:
Objection to the form.
THE WITNESS:
So the things that Zeus checks when a lead submission comes through is first the compliance token, the consent from the web form along with the Jornaya --- or that's included in the Jornaya report. So it requires the Jornaya report showing the consent language. It checks to make sure that it's not a duplicate, it's not already actively being



called on, submitted in the last 21 days. And it checks to make sure that it's not on our internal do not call list before sending it through to the dialer.
BY ATTORNEY PERRONG:
**Q. So the type field would then encode whether or not a number is on Sunrun's internal do not call list?**
ATTORNEY GRAHAM:
Objection to the form.
THE WITNESS:
Not necessarily.
BY ATTORNEY PERRONG:
**Q. Why not?**
A. It's not indicating that it's on our do not call list. It's indicating that we should not be calling and following up on that specific submission. And it could be for several reasons. The 21-day rule, our internal do not call list or on that known litigator list.
**Q. So if the number's on the do



not call list, Zeus would not write sold.
Right?**
A. Correct. If the number is on Sunrun's do not call list.
**Q. Right.**
A. It would not have sold.
**Q. Does Sunrun subscribe to the national do not call list?**
A. Sunrun does not scrub against the national do not call list.
**Q. Why?**
A. Because we only call with consent from the customer. So even if they were on the national do not call list, they could give us permission to call them about solar.
**Q. You understand that the customer here has claimed that she did not consent?**
ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:
That she did not submit an inquiry, is that what you're



saying?
BY ATTORNEY PERRONG:
**Q. And thus did not consent, correct.**
A. I believe if memory serves correctly, that she indicated she didn't remember if she requested information and that the issue was we were allegedly calling while she was on a do not call list.
**Q. What's the basis for your statement just now that you believe that it was her allegation that she did not recall?**
A. If I'm remembering correctly, I read her statement and I believe that's where I saw it.
**Q. When you say that you read her statement, what statement do you refer to?**
A. I don't know exactly what it's called, one of the documents that we reviewed. But it's my understanding that the --- what's in question here is not that she didn't submit the

request, it was that we allegedly called while she was on a do not call list.
ATTORNEY GRAHAM:
Andrew, I don't know if this is a good time. I'm not going to hold you ---.
ATTORNEY PERRONG:
Yeah, I --- I think, yeah, we can take a ten minute break or so.
ATTORNEY GRAHAM:
Great.
---
(WHEREUPON, A SHORT BREAK WAS TAKEN.)
---
BY ATTORNEY PERRONG:
**Q. And did you speak at any with anybody during the break?**
A. No, I did not.
**Q. Did you message or email anybody during the break?**
A. No.
**Q. What is the purpose of the Sunrun 21-day no duplicate rule?**



A. The purpose of the rule is to catch duplicates so that we don't have two lead submissions for the same person in the dialer resulting in double calls.
**Q. So it's to prevent over calling the exact customer?**
A. Yes.
ATTORNEY GRAHAM:
Objection to form.
BY ATTORNEY PERRONG:
**Q. If that rule existed to stop over calling, why did Sunrun continue calling the Plaintiff for another month 17 times?**
ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:
The 21-day rule, if we receive a second lead submission, it only impacts the second submission, it doesn't impact the first submission. We'll still continue to call per the call cadence.



BY ATTORNEY PERRONG:
**Q. Would a Sunrun advisor placing a call have seen that Zeus do not call record?**
ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:
Are you referring to the lead log? Would an advisor see that lead log making a call?
BY ATTORNEY PERRONG:
**Q. Would it see that a duplicate lead was submitted?**
A. No.
**Q. Why would the advisor not be able to see that a duplicate was submitted?**
A. Because it's not within the scope of their role.
**Q. Does Sunrun have a do not call policy?**
A. We do.
**Q. If someone dispositions a lead as do not call in Zeus, does that flow to inContact in real time?**



ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:
If someone in Sunrun dispositions a lead?
BY ATTORNEY PERRONG:
**Q. Dispositions in Zeus, yes.**
A. In Zeus. So the disposition in Zeus is automated license. It's not an individual clicking and selecting that lead disposition.
**Q. If someone sends a letter to Sunrun and asks them to be placed on the internal do not call list, how is that number suppressed in inContact as a result?**
A. Once we receive communication to be put --- to put someone on the do not call list, then it will be --- if it's through a letter, not through a phone call, then it would be manually entered into a do not call list rather than an inContact disposition.
**Q. I want to turn back to your declaration, which was Exhibit 4.**

THE WITNESS:
I don't believe so.
BY ATTORNEY PERRONG:
**Q. All right.**
**Did anybody at Sunrun ever review this disclosure language?**
A. Yes. So in the process of being set up as a vendor, the account managers and their team would review consent language.
**Q. And Sunrun reviewed the marketing language on this website?**
A. Yes. That would have been part of the process as getting Next Level set up as a vendor.
**Q. And how do you square the five partners language with the fact that this was an exclusive lead?**
A. This would be more of a blanket statement. The link --- there would be like a document linked right there, the five partners. It's a hyperlink that lists all the potential partners that it could be sent to. But what makes it exclusive is Next Level only



will send this to Sunrun. Even though it says up to five partners, they can still send it to just one partner.
**Q. Okay.**
**Can you go back to Exhibit 6?**
**And it's going to be --- I have a question regarding page three.**
A. Oh, let me see. Let me try to refresh it. Okay, there we go. You said page three?
**Q. Yep.**
A. Okay.
**Q. Under specific solar marketing claims to avoid. Can you read paragraphs two, three, four for me?**
A. Two, three and four?
ATTORNEY GRAHAM:
Into the record?
BY ATTORNEY PERRONG:
**Q. Could you please --- yeah.**
**Could you please just read those for me?**
A. Let me zoom in here. Hold on. All right. Specific solar marketing claims to avoid. Number two,



incorrect statements related to expiring governmental rebates or tax credits designed to force consumers into quick decisions. Number three, any statements or representations that improperly imply affiliation with a government entity, government program or utility. Number four, any statements or representations that the government will pay for or has paid for consumers to go solar.
**Q. Does Sunrun prohibit these marketing claims?**
A. Yes.
**Q. What is the website that the Plaintiff is alleged to have visited?**
A. That would be from the web form.
A. Yes.
**Q. Gov Solar Programs. I don't know exactly.**
**Q. Is Gov Solar Programs operated by the government?**
ATTORNEY GRAHAM:
Objection to form.



THE WITNESS:
I don't --- I don't know who owns that website. I couldn't say for sure.
BY ATTORNEY PERRONG:
**Q. Would you agree that that's misleading, that it implies an affiliation with the government?**
ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:
I wouldn't say that it implies affiliation with the government.
BY ATTORNEY PERRONG:
**Q. So a website called Gov Solar Programs doesn't imply affiliation with the government?**
ATTORNEY GRAHAM:
Objection to form.
THE WITNESS:
There are government programs available to help with going solar. Without seeing the entire website, only going