# EXHIBIT 9

# EXHIBIT 7

# EXHIBIT 8

# EXHIBIT 9

# EXHIBIT 10

# EXHIBIT11

# EXHIBIT 12

# EXHIBIT 13

# EXHIBIT 14

# EXHIBIT 15

# EXHIBIT 16

# EXHIBIT B

# EXHIBIT E

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:25-cv-00851-GPG

PEGGY BANKS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BIO TRUST NUTRITION, LLC,

Defendant.

---

**DEFENDANT BIO TRUST NUTRITION, LLC'S MOTION FOR PROTECTIVE ORDER LIMITING DISCOVERY TO THRESHOLD ISSUES RELATING TO PLAINTIFF'S INDIVIDUAL CLAIMS**

---

## INTRODUCTION

Defendant Bio Trust Nutrition, LLC ("BioTrust") respectfully moves the Court pursuant to Fed. R. Civ. P. 26(c) for the entry of a protective order (1) limiting discovery solely to matters relevant to Plaintiff Peggy Banks's ("Plaintiff") individual transaction history with BioTrust and her consent (or lack thereof) to receive the challenged text messages, as set forth in BioTrust's concurrently-filed Motion to Bifurcate Discovery ("Motion to Bifurcate") (*see* ECF No. 14) and (2) deferring all other discovery at least until the Court issues a ruling on BioTrust's Motion to Bifurcate and, if granted, until the Court thereafter determines whether Plaintiff's individual claim survives the dispositive motion that BioTrust intends to file promptly at the close of phase one in bifurcated discovery. This tailored relief dovetails with and is necessary to effectuate the efficiencies contemplated by BioTrust's Motion to Bifurcate.[1]

Good cause exists for this requested relief because Plaintiff has served numerous broad

[1] BioTrust is agreeable to stipulate to a reasonable extension of the discovery deadlines in the event that the Motion to Bifurcate is denied.

discovery requests probing nationwide class issues, merits questions far beyond her individual claim, and matters irrelevant to the threshold issue of her consent to receive the challenged text messages. Allowing sweeping class discovery to proceed before the Court resolves whether this Plaintiff even has a legitimate claim would impose undue burden and expense on BioTrust, contravene the proportionality mandate of Rule 26(b)(1), and needlessly consume judicial resources.

## BACKGROUND

Plaintiff brings a single Telephone Consumer Protection Act ("TCPA") claim premised on the assertion that she never did business with BioTrust and never consented to receive text messages. *See* Compl., ¶¶ 20, 27-28, 30. BioTrust's business records confirm the opposite: Plaintiff voluntarily provided her phone number and affirmatively provided express consent to receive marketing texts when she purchased a dietary supplement from BioTrust on September 28, 2020. *See* ECF No. 14-1, at ¶ 2.

In early May 2025, BioTrust produced to Plaintiff's counsel a screenshot of the relevant portion of the checkout page that Plaintiff would have encountered when completing her purchase, which included a disclosure informing Plaintiff that she consented to receive messages from BioTrust by completing the webform. *See* ECF No. 13, at 8-9. BioTrust also produced Plaintiff's purchase information, including the date and time, product, price, first and last name, shipment address, email, and phone number. *Id.* Because consent is a complete defense to Plaintiff's claim, targeted discovery focused on confirming the facts of her purchase and opt-in will position the Court to resolve this litigation at minimal cost.

Recognizing the dispositive nature of the threshold consent issue, BioTrust concurrently seeks bifurcation of discovery under Rule 42(b). *See* ECF No. 14. Despite the narrowness of that

issue, Plaintiff's first wave of discovery on BioTrust is anything but. On June 3, 2025, Plaintiff propounded the following discovery on BioTrust (collectively, the "Requests," attached as Exhibit 1 to the accompanying Declaration of Ryan D. Ball ("Ball Decl.")):

- Ten (10) interrogatories ("ROGs") seeking, among other things, detailed information about BioTrust's telemarking practices, identification of third-party vendors, identification of employees and vendors involved in outbound calls or tests (whether or not related to Plaintiff), details about the systems or platforms used to contact Plaintiff, and facts supporting any affirmative defenses. *See* Ball Decl., Ex. 1 at 6-8.
- Twenty-seven (27) requests for production ("RFPs") covering, among other things, nationwide texting data, all complaints received by Bio Trust concerning telemarketing, all insurance and indemnity agreements, all do-not-call policies, and an array of class-wide customer records stretching back four years. *Id.* at 8-15.
- Forty-one (41) requests for admission ("RFAs"), many of which seek concessions on class certification, willfulness, the constitutionality of summary judgment, nationwide do-not-call compliance, and other issues unrelated to Plaintiff's individual consent. *Id.* at 15-20.

Responding to each of Plaintiff's Requests would require Bio Trust to collect, review, and produce voluminous data from multiple systems, engage outside vendors to extract historical short-code records, and marshal testimony from employees in several departments and potentially third-party service providers—all before the Court has determined whether Plaintiff's claim can survive summary disposition. Thus, a protective order limiting discovery to the same focused issues set forth in BioTrust's Motion to Bifurcate is the logical companion to such bifurcation. Without such

protection, Plaintiff can serve (and has already served) extensive discovery while the Court is still assessing whether she has any viable individual claim, thereby imposing precisely the undue burden, expense, and distraction that Rule 26(c) is designed to prevent.

## LEGAL STANDARD

The Court at its discretion may "issue an order to protect a party … from annoyance, embarrassment, oppression, or undue burden or expense" by "specifying terms … for the disclosure or discovery," "forbidding inquiry into certain matters," or "limiting the scope of disclosure." Fed. R. Civ. P. 26(c)(1)(B), (D). Courts in this District and elsewhere routinely exercise this discretion to narrow the first phase of discovery in TCPA class actions to discrete individualized issues. *E.g.*, *Ragsdale v. Harmony Leads, Inc.*, 2025 WL 1617233, at *2 (D. Colo. May 9, 2025) (Prose, J.) (ordering a "scheduling order . . . setting for the scope of the first phase of discovery on [Plaintiff's] individual claims"); *Harris v. Shore Funding Sols., Inc.*, 2023 WL 3440077, at *5 (E.D.N.Y. Apr. 21, 2023) (bifurcating discovery with an initial phase "limited to whether on April 19, 2022 Plaintiff received a call from Defendant at the (205) 503-XXXX number and ownership of the subject phone"); *Newell v. Aliera Healthcare, Inc.*, 2020 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (bifurcating discovery with an initial phase of "limited discovery on how [Defendant] acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA"); *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, 2014 WL 413534, at *5 (D.N.J. Feb. 4, 2014) (bifurcating discovery and ordering submission of a "proposed schedule for [initial] fact discovery concerning whether the faxes sent were informational or whether their apparent informational content was a sham and the faxes were in reality advertisements."). This Court should do the same here by issuing a protective order limiting discovery to Plaintiff's individual transaction history with BioTrust and her alleged consent (or

lack thereof) to receive the challenged text messages.

**ARGUMENT**

There is good cause for a protective order. Fed. R. Civ. P. 26(b)(1) requires that discovery be "proportional to the needs of the case" factoring in "the importance of the issues at stake," "the amount in controversy," "the parties' resources," and whether "the burden or expense of the proposed discovery outweighs its likely benefit." The full scope of discovery that Plaintiff currently seeks is disproportionate to the needs of the case at this stage, is unduly burdensome, and premature in light of BioTrust's Motion to Bifurcate and the narrow consent issue that may dispose of Plaintiff's claims and this action entirely.

The discovery served by Plaintiff earlier this month seeks broad class and merits discovery. To name just a few examples, the Requests seek information about putative class members (*e.g.*, ROGs 2-3; RFPs 23-25; RFAs 1-2, 20-22, 41); historic texting "campaigns" and all personnel and third parties involved in such "campaigns" (ROGs 2-4, 10; RFPs 24-26), BioTrust's systems and platforms, as well as the general operations of the same (*e.g.*, ROG 8; RFPs 6-7, 19, 21-22; RFAs 12-16, 40); BioTrust's agreements and/or communications with or about third-party vendors (*e.g.*, ROGs 2, 4, 7; RFPs 8-9, 11-15, 17, 26; RFA 28); complaints received from different consumers (*e.g.*, RFP 10); and a broad range of internal policies and procedures (*e.g.*, ROG 10; RFPs 8-9, 18; RFPs 24-26, 32, 40), requests which, as written, have no bearing on whether Plaintiff individually consented to receive text messages from BioTrust in September 2020. *See Kemen v. Cincinnati Bell Telephone Co., LLC*, 2024 WL 3633333, at *3 (S.D. Ohio Aug. 2, 2024) (limiting first phase of discovery to "threshold issues that both require little discovery and could be dispositive of [Plaintiff's] individual claim").

Responding to all of Plaintiff's Requests would require Bio Trust to undertake extensive

company-wide searches, engage multiple third-party vendors, and review extensive call-detail and customer databases—efforts measured in hundreds of hours, if not more. And those efforts would require substantial, irrevocable monetary outlay from BioTrust that may be wasted. Until the threshold issue of Plaintiff's consent is adjudicated, the benefit of additional discovery is minimal, whereas the burden to BioTrust is both substantial and unnecessary. *See, e.g.*, *Fania v. Kin Ins., Inc.*, 2024 WL 2607303, at *3 (E.D. Mich. May 24, 2024) ("for purposes of efficiency, the Court will review evidence and make a determination with regard to Fania's plaintiff-specific claim prior to costly and time-consuming class discovery."); *Harris*, 2023 WL 344007, at *4 (observing that costs of discovery "can be particularly unforgiving for defendants"); *Osidi v. Assurance IQ, LLC*, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) ("The Court agrees that, in this matter where Defendant has raised potentially dispositive issues, it would be prudent to test the merits of Plaintiff's allegations before engaging in costly class discovery.") (cleaned up); *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, *1 (D. Mass. Feb. 27, 2019) ("Controlling the scope of discovery is particularly appropriate where discovery will impose considerable expense and the claims may be resolved on issues that require only limited or targeted discovery.").

Meanwhile, Plaintiff will not be prejudiced by a protective order restricting discovery only to targeted discovery relating to Plaintiff's consent: if her claim survives, Plaintiff will receive the remaining discovery in due course. *See, e.g.*, *Newell*, 2020 WL 13568762, at *3 ("any prejudice to Plaintiff is significantly outweighed by the potential burdens and costs associated with unnecessary class action discovery" because "[Defendants] are on notice to preserve evidence pertaining to this matter"); *Janssen*, 2014 WL 413534, at *5 ("While Plaintiff raises concerns over delay and the possibility that evidence will be lost or destroyed, these concerns are not overly persuasive."); *Harris*, 2023 WL 3440077, at *5 ("granting Defendant's motion will not cause

undue burden and expense to Plaintiff nor would it prejudice Plaintiff because this case is in the nascent stages."); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (rejecting argument that targeted initial discovery "poses a risk that the third-party [Defendant] used to send the messages at issue will destroy relevant call records" because "[Plaintiff] may subpoena the third party at issue or take some other action to ensure the preservation of records."): *Deleon v. Time Warner Cable LLC*, 2009 WL 10674767, at *2 (C.D. Cal. Nov. 2, 2009) ("to the extent Plaintiff is frightened that some misfortune might befall documents and witnesses while they are in Defendant's control, the Court finds that such a risk is minimal and clearly outweighed by the expenses that might be saved").

BioTrust's proposed protective order aligns with established TCPA precedent and ensures a "just, speedy, and inexpensive" determination of the case. Fed. R. Civ. P. 1. Absent a protective order, BioTrust would be forced to collect, review, and produce voluminous nationwide calling and texting records (exposing the personal data of numerous individuals who are not parties to this lawsuit), as well as BioTrust's competitively sensitive platform data and internal policy materials that are irrelevant to the dispositive issue of Plaintiff's individual consent. And all for nothing if Plaintiff's individual claim fails. A protective order limiting initial discovery to the issue of Plaintiff's consent also permits the Court to focus on a simpler factual record and promotes judicial economy. *Fania*, 2024 WL 2607303, at *4 ("requiring the parties to continue down the path of Plaintiff specific discovery . . . is the most efficient way to assure an expeditious resolution to this case. And it is the most efficient use of the Court's resources."); *Janssen*, 2014 WL 413534, at *5 (limiting first phase discovery "solely to whether the faxes sent to Plaintiff are informational or whether their apparent informational content is a sham . . . will allow the Court to address a narrow, potentially dispositive issue in a timely and cost effective manner").

## CONCLUSION

Good cause exists to shield BioTrust from the undue burden of premature, expansive discovery while the Court resolves the dispositive threshold issue of Plaintiff's consent. The protective order sought here is reasonably and narrowly drawn, consistent with Rule 26(c), and essential to implement the efficiencies of BioTrust's Motion to Bifurcate. BioTrust respectfully requests that the Court grant this Motion and enter an order granting BioTrust's requested relief set forth in BioTrust's Proposed Order attached hereto for the Court's review and signature.

## COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to D.C. Colo. L. Civ. R. 7.1(a), the undersigned counsel certifies that counsel for Defendant has conferred, in good faith, with counsel for Plaintiff concerning this Motion, and that the parties were unable to reach agreement on the matters set forth in this Motion.

Dated: June 27, 2025

JONES DAY

By: *s/ Ryan D. Ball*
Ryan D. Ball
rball@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2025, I have caused a true and correct copy of the foregoing **DEFENDANT BIO TRUST NUTRITION, LLC'S MOTION FOR PROTECTIVE ORDER LIMITING DISCOVERY TO THRESHOLD ISSUES RELATING TO PLAINTIFF'S INDIVIDUAL CLAIMS** to be served with the Court via the CM/ECF system, which shall serve the same on the following:

Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff*

*/s/ Ryan D. Ball*
Ryan D. Ball

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:25-cv-00851-GPG

PEGGY BANKS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BIO TRUST NUTRITION, LLC,

Defendant.

---

**DECLARATION OF RYAN BALL IN SUPPORT OF DEFENDANT BIO TRUST NUTRITION, LLC'S MOTION FOR PROTECTIVE ORDER LIMITING DISCOVERY TO THRESHOLD ISSUES RELATING TO PLAINTIFF'S INDIVIDUAL CLAIMS**

---

**DECLARATION OF RYAN D. BALL**

I, Ryan D. Ball, declare and state:

1. I am over the age of 18 years old. I am a partner in the law firm Jones Day, counsel of record for Defendant Bio Trust Nutrition, LLC ("BioTrust"), and I am a member in good standing of the bars of the States of California and New York. I make this declaration in support of BioTrust's Motion For Protective Order Limiting Discovery To Threshold Issues Relating To Plaintiff's Individual Claims. The contents of this declaration are based on my own personal knowledge and my review of information, documents, and records in this case, and if called as a witness, I would competently testify thereto.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the interrogatories, requests for the production of documents, and requests for admission (collectively, the "Requests") served by counsel for Plaintiff Peggy Banks ("Plaintiff") on BioTrust on June 3, 2025.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27th day of June, 2025, in Irvine, California.

Ryan D. Ball

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of June, 2025, I have caused a true and correct copy of the foregoing **DECLARATION OF RYAN BALL IN SUPPORT OF DEFENDANT BIO TRUST NUTRITION, LLC'S MOTION FOR PROTECTIVE ORDER LIMITING DISCOVERY TO THRESHOLD ISSUES RELATING TO PLAINTIFF'S INDIVIDUAL CLAIMS** to be served with the Court via the CM/ECF system, which shall serve the same on the following:

Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff*

*/s/ Ryan D. Ball*
Ryan D. Ball

*Attorneys for Defendant*

# EXHIBIT 1

## to Declaration of Ryan D. Ball

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO**

| | |
|---|---|
| PEGGY BANKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BIO TRUST NUTRITION, LLC<br><br>Defendant. | Case No. 1:25-cv-851<br><br>**JURY TRIAL DEMANDED**<br>**CLASS ACTION** |

**PLAINTIFF'S FIRST SET OF DISCOVERY**

**INSTRUCTIONS FOR INTERROGATORIES**

1. Pursuant to Rule 33, submit your answers to the interrogatories herein in writing and under oath to the undersigned counsel within 30 days of the date of service on you. If any of these interrogatories cannot be answered in full, then you should answer to the fullest extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion or portions. In answering these interrogatories, furnish such information as is available to you, regardless of whether this information is obtained directly by you, through your agents or representatives or by any of your attorneys. For each interrogatory, please identify all persons who provided information used in answering it.

2. These interrogatories are continuing in nature. In accordance with Rule 26, you are required to supplement your answers to the interrogatories when new or additional information becomes known to you.

## INSTRUCTIONS FOR REQUESTS FOR PRODUCTION

3. Pursuant to Rule 34(b)(2)(B), on the date production is due, Defendant shall produce all the responsive documents or specify a reasonable date certain on which they will be produced.

4. In accordance with Rule 34(b), you shall provide written responses to the following requests and shall produce the requested documents as they are kept in the ordinary and usual course of business or shall organize and label the documents to correspond with the categories in this request.

5. A draft and a final version are two distinct documents.

6. If Defendant withholds the production of any responsive document on the grounds that the document is privileged or otherwise protected, Defendant shall state in a privilege log the nature of the claim of privilege or protection; the type and nature of the document; the date of the document; the author(s), the addressee(s), and recipient(s) of the document; the document's present location; and any other information that will enable Plaintiff and the Court to assess the applicability of the privilege or protection.

## INSTRUCTIONS FOR REQUESTS FOR ADMISSIONS

7. Each request seeks all information available to the Defendant or the Defendant's agents, and to any other person acting on Defendant's behalf. Each of these requests shall be deemed to be continuing in the manner provided under the Federal Rules of Civil Procedure. If a request cannot be answered in full, answer to the fullest extent possible and specify all reasons for the inability to answer in full.

8. If you believe that you cannot admit or deny any request, please state the reason why you are unable to respond. If you can admit part of a request, you are required to do so.

9. If Defendant claims any privilege or immunity from discovery with regard to any request made herein, please provide a summary of all facts and circumstances upon which the claim is based.

## DEFINITIONS

The following terms shall have the following meanings, even when not capitalized or bolded:

10. **"Communication"** includes all forms of correspondence, including, but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages.

11. "**Defendant**" means the defendant named in this lawsuit who is being served with these requests and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

12. "**Describe**" means to identify and explain fully the characteristics, nature and substance of a given thing, action, communication or event, to set forth all details, physical properties and dimensions of a physical thing inquired about, and to specify all pertinent dates, locations, causes, purposes, effects and results of the thing, action, communication or event inquired about.

13. "**Document**" means any writing as defined in Rule 34(a)(1)(A), however produced, reproduced, archived or stored, within your possession or subject to your

control, of which you have knowledge or to which you now have or previously had access, including all ESI.

14. "**Identify**" (when used in reference to a document) means to state the date of preparation of the document, its author, the sender (if any), the recipient (if any), the nature of the document (e.g., letter, memorandum or tape) and other means of identification sufficient to specify the document for purposes of a request for production, and to further state its present location and custodian. If any such document was, but no longer is, in your possession or custody or subject to your control, describe what disposition was made of it and give the name, address and telephone number of the person presently having possession, custody or control of the document.

15. "**Identify**" (when used in reference to a natural person) means to state that person's full name, title, business address, telephone number, email address, occupation and employer, along with a statement of whether that person is represented by your counsel in this litigation.

16. "**Identify**" (when used in reference to an entity) means to state the entity's full name, address, telephone number, state of incorporation or organization and web address. Unless it otherwise appears from the context, a request for the identity of a person relates to all persons in the relevant classification or category, and the request for the identity of an entity includes all affiliated entities.

17. "**Person**" means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

18. "**Plaintiff**" means the Plaintiff in this lawsuit.

19. “**Policy**” means any instruction, practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct that was or has been recognized, adopted, issued or followed by you—regardless of whether written or unwritten, formal or informal, recorded or unrecorded.

20. “**TCPA**” means the Telephone Consumer Protection Act, 47 U.S.C. § 227.

21. “**Telemarketing**” means a telecommunication that could have generated or was intended to generate leads, customers or sales for you or any franchisee of yours within the United States. A communication is telemarketing even though it (1) had other, additional purposes (e.g., fulfillment of a partially completed transaction or verification of information); (2) was to a person who had consented to receive it; (3) was to a person who had a prior existing business relationship with you; (4) was not made by you; and/or (5) was not made for your exclusive or direct benefit.

22. “**Third party**” means any natural person, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by you.

23. “**Vendor**” means any third party under contract with, hired by, employed by, paid by or working for you, directly or indirectly, for purposes of telemarketing or phone-based activities or services, including, but not limited to, generating leads, warm transfers, hot transfers or any other call transfers, making outbound telemarketing calls, or tracking or aggregating data related to any of those activities, including, but not limited to, any co-defendant.

24. “**You**” means the entity to which these requests are propounded and includes, without limitation, any of its past or present offices, locations, divisions,

affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

25. All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/

**RELEVANT TIME PERIOD**

Unless otherwise indicated, these requests shall pertain to the time period starting four years before the filing of the original complaint in this case and continuing through the present and shall include all documents and information that relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received outside of that period.

**INTERROGATORIES**

1. Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**ANSWER:**

2. Identify all employees or vendors involved in making outbound calls or text messages as part of the campaign that contacted the Plaintiff. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads, including platform providers, (b) the dialing system(s) each platform or provider used to make calls, and (c) where the phone numbers to make the calls is obtained.

**ANSWER:**

3. Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.

**ANSWER**:

4. Identify all third parties or sub-vendors used by your vendors to for you as part of your relationship with any vendor identified in response to Interrogatory No. 2.

**ANSWER:**

5. If you contend that Plaintiff provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.

**ANSWER:**

6. If you contend that a third party made the calls alleged in the complaint, identify that third party and state all facts in support of the same.

**ANSWER:**

7. Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.

**ANSWER:**

8. Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, used to contact the Plaintiff.

**ANSWER:**

9. State all facts in support of any affirmative defenses you have raised.

**ANSWER**:

10. Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**ANSWER**:

**DOCUMENT REQUESTS**

1. Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

**RESPONSE:**

2. Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff, records of any purported consent provided to Plaintiff, or your investigation into outbound text messages made to Plaintiff, including a record of all text messages sent to Plaintiff.

**RESPONSE:**

3. Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE:**

4. Please produce all documents identifying the ANI and the CPN for the text messages sent to Plaintiff.

**RESPONSE:**

5. Please produce all documents identifying the caller ID name information that was sent to Plaintiff as part of the text messages to Plaintiff.

**RESPONSE:**

6. Please produce all documents related to the registration of the 35268 short code, including documents sufficient to ascertain in whose name the short code is registered.

**RESPONSE:**

7. Please produce all documents related to the collection of and loading of numbers to send as part of the campaign that contacted the Plaintiff.

**RESPONSE:**

8. Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls or text messages.

**RESPONSE:**

9. Please produce all documents relating to any failure, alleged failure, or possible failure by you or any vendor to comply with your policies related to telemarketing.

**RESPONSE:**

10. Please produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

**RESPONSE:**

11. All contracts or documents representing agreements with any vendor to whom you provided Plaintiff's telephone number or information, including for the purposes of sending outbound calls or text messages.

**RESPONSE:**

12. All internal communications at your company regarding any vendor to whom you provided Plaintiff's telephone number or information, including for the purposes of sending outbound calls or text messages.

**RESPONSE:**

13. All contracts or documents representing agreements with any third party that sent the text messages to the Plaintiff.

**RESPONSE:**

14. All communications with any third party that sent the text messages to the Plaintiff.

**RESPONSE:**

15. All internal communications at your company regarding any third party that sent the text messages to the Plaintiff.

**RESPONSE:**

16. Please produce all documents relating to insurance coverage of the acts alleged by Plaintiff, including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers, including, but not limited to, reservation-of-rights letters, regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter.

**RESPONSE:**

17. Please produce all indemnification agreements under which a third party may be responsible for satisfying all or part of a judgment that may be entered against you in this action, and all communications with those third parties.

**RESPONSE:**

18. Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

a) compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;
b) obtaining or verifying prior express consent;
c) transmitting accurate caller ID phone number and name;
d) complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*

**RESPONSE**:

19. Please produce all documents containing any of the following information for each outbound telemarketing text message sent by you or your vendors, including to the Plaintiff:

a) the date and time;

b) the caller ID;

c) the result;

d) message contents;

e) any information showing the called party's consent to be called or preexisting business relationship with you;

f) the response(s) of the called party, whether then or later, and whether by SMS, IVR, voicemail, email live oral response recorded mechanically by you, live oral response summarized in written notes by you or otherwise;

g) identifying information for the recipient; and

h) any other information stored by the call detail records.

**RESPONSE:**

20. With respect to any orders alleged to have been placed by the Plaintiff, please produce all data dictionaries, keys, data tables, database exports, databases, lists, systems, platforms, and/or equipment, containing such order information, with respect to the Plaintiff only.

**RESPONSE:**

21. Please produce all data dictionaries or keys to data tables for each system, platform, and/or equipment used by you, or any vendor, to send telemarketing, or to store data about telemarketing.

**RESPONSE:**

22. Please produce all data dictionaries or keys to data tables for each database, list, system, platform, and/or equipment used by you, or any vendor, to store data about a person's purported consent to receiving telemarketing.

**RESPONSE:**

23. Records of all customers who (1) had not placed an order with Bio Trust at all, but who (2) received a text message or telephone calls from Bio Trust.

**RESPONSE:**

24. Records of all customers who (1) had placed an order with Bio Trust, but who (2) received a text message or telephone calls from Bio Trust on the telephone number(s) submitted with their order(s) more than eighteen months following their last order.

**RESPONSE:**

25. Records of any recorded putative consent (or lack thereof), including whether or not they checked the box for "Yes! Keep me up to date on news and exclusive offers via text messages from Biotrust.com," or similar such language, for any customers identified responsive to Request for Production 23.

**RESPONSE:**

26. All communications with any third party concerning this litigation other than your attorney.

**RESPONSE:**

27. Please produce your do-not-call policy.

**RESPONSE:**

## REQUESTS FOR ADMISSIONS

1. Admit that you possess no prior consent to contact Plaintiff or any class member.

**RESPONSE:**

2. Admit that you possess no documents evidencing that your company had an established business relationship with Plaintiff or any class member.

**RESPONSE:**

3. Admit that you contend the Plaintiff placed an order on September 28, 2020.

**RESPONSE:**

4. Admit that you contend the order on September 28, 2020 is the only order you contend Plaintiff placed.

**RESPONSE:**

5. Admit that the Plaintiff did not check the box labeled, "Yes! Keep me up to date on news and exclusive offers via text messages from Biotrust.com," on any order she is alleged to have placed.

**RESPONSE:**

6. Admit that you do not know if the Plaintiff checked the box labeled, "Yes! Keep me up to date on news and exclusive offers via text messages from Biotrust.com," on any order she is alleged to have placed.

**RESPONSE:**

7. Admit that you sent no text messages to Plaintiff until July of 2024.

**RESPONSE:**

8. Admit that you sent no telemarketing text messages to Plaintiff until July of 2024.

**RESPONSE:**

9. Admit that you contacted the Plaintiff at least 2 times via text message.

**RESPONSE:**

10. Admit that any prior business relationship with the Plaintiff had expired when you contacted the Plaintiff using a text message.

**RESPONSE:**

11. Admit that the Plaintiff's telephone number is on the National Do Not Call Registry.

**RESPONSE:**

12. Admit that you loaded client telephone numbers into a text messaging campaign in 2024, without regards to whether or not those clients consented.

**RESPONSE:**

13. Admit that your entire client/order list into a text messaging campaign in 2024.

**RESPONSE:**

14. Admit that the 35268 short code is a short code shared by multiple companies.

**RESPONSE:**

15. Admit that you used the 35268 short code to send text messages to the Plaintiff.

**RESPONSE:**

16. Admit that you did not transmit a caller ID name when sending text messages using the 35268 short code.

**RESPONSE:**

17. Admit that the Plaintiff's telephone number was on the National Do Not Call Registry at least 32 days prior to receiving any of the text messages at issue.

**RESPONSE:**

18. Admit to all allegations, factual and legal, in the Plaintiff's complaint.

**RESPONSE:**

19. Admit that a text message is a "call" for the purposes of the TCPA.

**RESPONSE:**

20. Admit that the Plaintiff has met the requirements for class certification under Rule 23.

**RESPONSE:**

21. Admit that this class is properly certified under Rule 23(b)(2).

**RESPONSE:**

22. Admit that this class is properly certified under Rule 23(b)(3).

**RESPONSE:**

23. Admit that the text messages you sent were sent for telemarketing purposes.

**RESPONSE:**

24. Admit that you do not maintain an internal do not call list.

**RESPONSE:**

25. Admit that you do not scrub telephone numbers against the National Do Not Call Registry.

**RESPONSE:**

26. Admit that you do not maintain an internal do not call policy.

**RESPONSE:**

27. Admit that you send telemarketing text messages to individuals.

**RESPONSE:**

28. Admit that you ratified the conduct of any agent, vendor, or third party you contend sent the text messages at issue in this litigation by accepting the business generated by such entities.

**RESPONSE:**

29. Admit that the Plaintiff was never provided a copy of your do not call policy.

**RESPONSE:**

30. Admit that the Plaintiff was never placed on your internal do not call list.

**RESPONSE:**

31. Admit that the Plaintiff never signed up to receive text messages.

**RESPONSE:**

32. Admit that you do not maintain an FTC Subscription Account Number (SAN).

**RESPONSE:**

33. Admit that you paid for the messages complained of.

**RESPONSE:**

34. Admit that you directed the messages complained of.

**RESPONSE:**

35. Admit that you stood to benefit from the messages complained of.

**RESPONSE:**

36. Admit that you acted knowingly and wilfully.

**RESPONSE:**

37. Admit that the Plaintiff is entitled to the injunctive relief pled in the complaint.

**RESPONSE:**

38. Admit that summary judgment for the Defendant is unconstitutional as applied to the facts of this case.

**RESPONSE:**

39. Admit that summary judgment for the Defendant is inappropriate as applied to the facts of this case.

**RESPONSE:**

40. Admit that your telephone provider provides the functionality to transmit Caller ID Name.

**RESPONSE:**

41. Admit that you did not accurately transmit your caller ID name during any call or text message sent to Plaintiff or any class member.

**RESPONSE:**

RESPECTFULLY SUBMITTED AND DATED this June 3, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2025, a copy of the foregoing was served electronically on counsel for the Defendant via e-mail at mbilleci@jonesday.com, rball@jonesday.com. I also certify that I mailed the foregoing to: Matthew T. Billeci, 3161 Michelson Drive, Suite 800, Irvine CA 92612 with tracking number 00310903331480013153.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:25-cv-00851-GPG

PEGGY BANKS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BIO TRUST NUTRITION, LLC,

Defendant.

---

**[PROPOSED] ORDER GRANTING DEFENDANT BIO TRUST NUTRITION, LLC'S MOTION FOR PROTECTIVE ORDER LIMITING DISCOVERY TO THRESHOLD ISSUES RELATING TO PLAINTIFF'S INDIVIDUAL CLAIMS**

---

The Court, having considered Defendant Bio Trust Nutrition, LLC's ("BioTrust") Motion for Protective Order Limiting Discovery to Threshold Issues Relating to Plaintiff's Individual Claims ("Motion"), and good cause appearing therein, hereby GRANTS the Motion and orders as follows:

(1) Until the dispositive threshold issue of Plaintiff Peggy Banks's ("Plaintiff") consent to receive text messages from BioTrust has been adjudicated, all discovery in this matter shall be narrowly-tailored and limited to (a) information evidencing Plaintiff's purchase(s) from BioTrust and any consent to receive text messages given by Plaintiff; (b) documents and information sufficient to show Plaintiff's opt-out or unsubscribe status; and (c) any additional discovery mutually agreed upon by the parties in writing. This initial phase of discovery ("Phase One") shall be completed by October 3, 2025 or 120 days from the entry of this Order, whichever is later.

(2) Within thirty (30) days of this Order, BioTrust shall provide responses to the following discovery requests served by Plaintiff on BioTrust on June 3, 2025, but only to the extent the request seeks information specific to Plaintiff and the issue of consent. BioTrust's responses can

be narrowly-tailored to and consistent with the limitations set forth in subsections (a)-(c) of Paragraph 1 and subject to any other valid objections from BioTrust:

- Interrogatories Nos. 1 and 5.
- Requests for Documents Nos. 2, 3, 19, 20.
- Requests for Admission Nos. 1-9, 30.

(3) BioTrust is under no obligation to respond to any of Plaintiff's interrogatories, document production requests, or requests for admission served on BioTrust on June 3, 2025 that are not identified in Paragraph (2). Notwithstanding this protection, the parties are each permitted to seek additional discovery during Phase One that is narrowly-tailored to the categories identified in sections (a)-(c) of Paragraph 1. All other discovery (i.e., "Phase Two") shall not commence until any post-Phase One dispositive motion is decided by the Court or the Court orders otherwise.

**SO ORDERED** this _____ day of ________________________, 2025

BY THE COURT:

___________________________________