November 3, 2026

**Via ECF**

Hon. Peter H. Kang, U.S.M.J.
United States District Court
Northern District of California

Re: *Banks v. Sunrun Inc.*, No. 4:24-cv-07877-JST

Dear Judge Kang:

The parties respectfully submit this letter brief pursuant to the Court's October 20, 2026 Order (ECF 80). Lead counsel met and conferred by videoconference on October 23 and 27 and exchanged several follow-up communications; counsel were more than 100 miles apart, so an in-person meeting was not required. The discovery request at issue ("RFP 43") and Plaintiff's responses are attached as Exhibit A.

## I. Defendant's Position

RFP 43 seeks Plaintiff's communications with "any other Person" concerning "demand letters, or the filing or pursuit of claims or lawsuits Concerning telephone calls." (Ex. A.) To the extent Plaintiff deemed the request unclear, Sunrun narrowed it to three categories, from January 1, 2022 forward: (1) TCPA demand letters Plaintiff sent to companies other than Sunrun, and any responses; (2) correspondence about those demands or the resulting claims, including referral to counsel and pursuit of claims; and (3) settlement agreements and correspondence about resolution of those claims.[1]

**The documents exist and have been neither produced nor logged.** Plaintiff testified that she used the *Turning Robocalls Into Cash* kit's template to send "[p]robably 10 to 15" demands to other companies. (Banks Dep. 98:1–99:3.) At least five—QuinStreet, Strategic Consulting, Dreamsource Consulting, BioTRUST, and Paramount Builders—preceded TCPA suits in her name. (*Id.* 121:13–126:2; 99:13–15) ("I send the demand letters, I got no response. So I sent it to [Perrong, lead counsel here] and he took the cases that he wanted . . . .") She was paid in four of those matters and keeps the records "somewhere." (*Id.* 122:10–19, 123:22–124:4, 125:10–17, 126:5–13.) Her objection to producing "communications protected by confidentiality agreements" confirms that responsive documents exist. (Ex. A.) Yet her

[1] RFP 46 also expressly sought production of settlement agreements. The record confirms that Sunrun raised Plaintiff's prior TCPA settlements with Plaintiff's counsel and met and conferred regarding their production. (ECF 70-1 ¶ 38; ECF 71-4 at 3; ECF 75.) Plaintiff's counsel responded that "Ms. Banks's resolution of other matters has no bearing" on this case. (ECF 71-2 at 2 n.2.) ECF 75 was a joint discovery letter signed by both sides that expressly certified that counsel had met and conferred on this topic but could not resolve their dispute. Plaintiff now contends that Sunrun did not adequately raise the deficiency because it did not identify RFP 46 by number in writing. The record leaves no doubt that the parties disputed and met and conferred over discovery concerning Plaintiff's prior TCPA settlements. Plaintiff's position elevates form over substance and serves only to delay resolution of the discovery dispute. Nevertheless, out of an abundance of caution, Sunrun is recommencing the meet-and-confer process and, if necessary, will separately raise this and any remaining deficiencies with the Court.

October 29 response states that "[a]fter conducting an additional search" she has no responsive documents, describes a search limited to her robocalls.cash materials and related payment records, and accounts for no demand letter or settlement agreement. (*Id.*) Her privilege log reaches only communications "with her attorneys in this action regarding this action." (*Id.*)

**Plaintiff has previously withheld information.** Plaintiff withheld as privileged the *Turning Robocalls Into Cash* kit, which Sunrun learned of only at her deposition, and did not produce it until September 18, 2026, after Sunrun served its portion of a joint letter. (ECF 70-1 ¶¶ 19–20.) Similarly, contrary to an earlier representation that Dana Oliver was the only overlapping counsel between this case and *Strickland v. Sunrun* (a related case), and in violation of Civil L.R. 3-15, Plaintiff did not disclose until September 10, 2026 that Anthony Paronich, lead counsel in *Strickland*, has been her co-counsel, with an equal fee interest, since before suit. (*Id.* ¶¶ 16, 23, 26–27.) Judge Tigar found that "it appears that Plaintiff withheld relevant information during the fact discovery period" and extended fact discovery (ECF 76).

**The discovery goes to whether Plaintiff's claims were manufactured.** The July 11, 2024 webform on which Sunrun relied included Plaintiff's information and came from an IP address sharing its first seven digits with the IP address used, minutes apart on July 15, 2024, for two more webforms bearing Plaintiff's information—a solar inquiry to CEE and a non-solar inquiry that became *Banks v. QuinStreet*. (ECF 70-1 ¶¶ 33–35.) The overlapping IP addresses are not coincidental. Plaintiff averred that she did not consent to calls about solar energy or complete webforms (ECF 1 ¶¶ 14–15; Interrog. Nos. 1 and 13, RFP Nos. 16, 20), but at her deposition she said only that she did not recall submitting the July 11 form. (Dep. 79:7–10.) Her other cases follow a similar pattern. In *BioTRUST*, the defendant relied on a 2020 consent form with Plaintiff's information; in *Paramount*, the defendant relied on a January 2022 webform in Plaintiff's name. (ECF 74-10; ECF 74-16 at 5.) Plaintiff dismissed both cases and likely received settlement payments. (ECF 74-12; 74-17.) Her demands, settlements, and related communications will show whether the sequence—a submission in her name, calls, a template demand, referral to counsel, and a payment—recurs. That bears on consent, who generated the leads, the TCPA's zone of interests, and on typicality and adequacy. A plaintiff whose "credibility and motives in light of his litigation background" would invite a factfinder to "infer that the plaintiff was not truly an aggrieved consumer" should not represent a class. *Wuest v. My Pillow, Inc.*, No. 3:18-cv-03658, 2019 WL 3577176, at *5 (N.D. Cal. Aug. 6, 2019) (cleaned up).

In *Wilson v. Freeway Ins.*, No. 6:25-cv-01869-MC (D. Or.)—brought by Plaintiff's counsel here—the court, "concerned about whether criminal fraud is taking place" regarding manufactured claims, denied class certification and authorized discovery into the claims' origins, webforms, and roles of counsel, including the Heidarpour Law Firm ("HL"). (ECF 70-1 ¶¶ 2–4, 8; 70-2 at 42:20–22.) Mr. Oliver is associated with HL. (ECF 75-4.) In another case brought by counsel here, counsel represented that an IP address "is not our client's;" the plaintiff later admitted it was. (ECF 70-1 ¶ 7.) There are other cases involving counsel here that raise similar, serious questions regarding the legitimacy of the claims asserted. The revelation of the pattern across cases here led Sunrun to look further into Plaintiff's claims. It did not lack diligence but trusted that Plaintiff and counsel were providing accurate and complete discovery responses.

**Plaintiff has repeatedly promised supplementation.** On October 30, Sunrun extended the deadline for this submission so that Plaintiff could search for and produce responsive documents. After hearing nothing further, Sunrun again pressed for an answer on November 2, receiving only an afterhours response

that Plaintiff was "currently gathering responsive documents" and "[w]ill supplement." Indeed, Plaintiff produced nothing and supplied no production date until approximately one hour before today's close of business.

**Plaintiff has the timing backwards.** Sunrun waited for Plaintiff's promised supplementation, followed up again on November 2, and did not hear from Plaintiff until after 5 p.m. PT. And still, she did not produce any supplemental responses. Sunrun sent its portion of this letter at 4:31 a.m. on November 3, yet Plaintiff did not provide supplementation or otherwise communication for over ten hours (after Sunrun followed up again). Plaintiff's current compromise rings hollow, since he's promised this information and has not provided it or previously communicated when it would be provided.

## II. Plaintiff's Position

**SunRun's submission is untimely and goes beyond the conference.** SunRun obtained an extension of this filing to November 3 (ECF 81), then sent Plaintiff its portion of this letter on the morning of November 3, at 4:30 a.m. PT, the day the letter was due. That left Plaintiff hours to respond. SunRun's portion also raises issues that were never discussed at the conferences on October 23 and 27. Plaintiff served her supplemental response to RFP 43 on October 29, after those conferences. SunRun's criticisms of that response, including the scope of Plaintiff's search, the demand letters, and the privilege log, came up for the first time in e-mails afterward, if at all. Settlement agreements were never discussed, as SunRun's footnote concedes. Section H.2 of Judge Kang's policies regarding discovery disputes requires lead counsel to confer before a dispute is presented, so these issues are not properly before the Court. SunRun's portion also offers no proposed compromise, as Section H.3 requires.

**Little remains in dispute.** Plaintiff's other claims against other companies have no bearing on whether SunRun had consent to call her in July 2024, and discovery into them is not proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1). Even so, to avoid burdening the Court, Plaintiff agreed to supplement her response as to two of SunRun's three narrowed categories for the period from January 1, 2022 forward.

*First*, Plaintiff has agreed to produce TCPA demand letters or threats Plaintiff sent to companies other than SunRun, and any responses. She is collecting those documents now and will produce them by November 13, 2026, with the written confirmation of completeness that Section E of the Court's Standing Order requires. That commitment resolves this category.

*Second*, "correspondence about those demands or the resulting claims, including referral to counsel and pursuit of claims," consists on its face of communications between Plaintiff and her attorneys about her legal claims. Those communications are at the core of the attorney-client privilege. Plaintiff is preparing a privilege log of pre-filing communications that meets Section G and will serve it by November 13, 2026. Plaintiff has already served a log of her communications with counsel about this case.

*Third*, SunRun never raised settlement agreements at the conference, and it admits it has not even identified the request (RFP 46) in writing and is "recommencing the meet and confer process." (n.1.) The issue is not ripe. It is also doubly disproportional. What other companies paid to resolve other disputes says nothing about whether SunRun had consent to call Ms. Banks. Those agreements also contain confidentiality provisions that protect non-party counterparties, who would be entitled to notice. The existence and timing of those resolutions are already public, and SunRun cites the dismissals itself. (ECF 74-12; ECF 74-17.)

**SunRun's "manufactured claims" theory is not evidence.** SunRun says Ms. Banks testified "only that she did not recall" submitting the July 11 form. That is not correct. Ms. Banks also testified that she "didn't request it to begin with" and "never gave them explicit permission to call me." (Banks Dep. 91:14-21.) She identified that the July 11 lead misspelled both her surname and her e-mail address and listed an RV park where she no longer lived. (*Id.* 80:2–81:12.) And none of the additional IP addresses, not the one that SunRun identified, nor the ones that SunRun "discovered" after the close of discovery (and after most or all of the subject calls took place), is associated with Ms. Banks's carriers, AT&T and Spectrum. (*Id.* 30:17-18, 49:6-11.) SunRun also concedes that the later-proffered forms did not result in a call by SunRun or Clean Energy Experts (ECF 71-2 at 2), so they cannot supply consent for the calls at issue. Unadjudicated consent defenses asserted by other defendants in other cases are not evidence of anything, and the fact that a case settled says nothing about its merits.

Unlike SunRun, Plaintiff has actually pursued the origin of the July 11 lead. She subpoenaed the internet service provider for the IP address at issue, and that subpoena returned no responsive records. She also subpoenaed NXTLVL, the lead vendor on which SunRun's consent defense rests, and when NXTLVL did not respond, she moved to compel. *Banks v. NXTLVL, LLC*, No. 2:26-mc-00074 (E.D. Pa.). NXTLVL still did not respond. SunRun's remaining arguments are insinuations about counsel drawn from other cases. The Heidarpour Law Firm has no role in this case and no financial interest in it (ECF 71-1 ¶ 10), and Mr. Oliver's associations in other matters do not change that.

**The other matters Sunrun invokes are rhetoric, not a discovery dispute.** *Wilson* and the other situations Sunrun cites involved different plaintiffs, different defendants, and different facts. They have no place in a letter meant to resolve a dispute over RFP 43, and Plaintiff will not burden the Court with a detailed response. It is enough to say that Sunrun takes those matters wildly out of context. For example, in the case in which Sunrun says counsel denied that an IP address belonged to the plaintiff (ECF 70-1 ¶ 7), counsel had simply looked at the wrong IP address in an e-mail. The plaintiff in that case continues to deny making the submission, and the defendant there sent the plaintiff multiple communications after he filed suit, just as the third alleged submission here occurred while this litigation was pending.

That timing is the point. The alleged March 6, 2025 submission came six months *after* Ms. Banks's written demand to SunRun and nearly four months *after* she filed this lawsuit. (ECF 71 at 2-3.) A plaintiff suing over calls she never requested has every reason not to generate new "consent" in her own name in the middle of the case. Someone circulating her information to lead buyers has every reason to keep doing so. The pattern SunRun describes points to third parties using Ms. Banks's information, not to Ms. Banks. And nothing in SunRun's three categories, which concern letters Plaintiff sent and her privileged communications with counsel, could show otherwise. As for *Wuest*, it decided adequacy at class certification, which is where SunRun may raise these arguments.

None of this is a basis to compel Ms. Banks's privileged communications or raise issues with what the Plaintiff has already agreed to produce.

**Plaintiff's proposed compromise.** (1) Plaintiff will produce the demand letters and any responses by November 13, 2026, with written confirmation of completeness under Section E. (2) Plaintiff will serve a Section G privilege log for category two by November 13, 2026. (3) Settlement agreements should be addressed, if at all, in the conference SunRun says it is recommencing. With those commitments, the Court should deny SunRun's request as moot as to categories one and two and as unripe as to category three.

November 3, 2026

Respectfully submitted,

*/s/ Andrew Perrong*
Andrew Perrong (*pro hac vice*)
**PERRONG LAW LLC**
2657 Mount Carmel Avenue
Glenside, PA 19038
Tel: (215) 225-5529
Fax: (617) 830-0327
a@perronglaw.com

Dana J. Oliver (SBN #291082)
dana@danaoliverlaw.com
**OLIVER LAW CENTER, INC.**
8780 19th Street, #559
Rancho Cucamonga, CA 91701
Tel: (855) 384-3262
Fax: (888) 570-2021
*Attorneys for Plaintiff Peggy Banks*

*/s/ Glenn T. Graham*
Glenn T. Graham (SBN #338995)
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Tel: (973) 503-5900
Fax: (973) 503-5950
ggraham@kelleydrye.com
*Counsel for Defendant Sunrun Inc.*

## ATTESTATION

I, Glenn T. Graham, am the ECF user whose identification and password are being used to file this document. I hereby attest that all other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 3, 2026

/s/ *Glenn T. Graham*
Glenn T. Graham