November 18, 2026

Via ECF

Hon. Peter H. Kang
United States District Court
Northern District of California

Re: *Banks v. Sunrun Inc.*, No. 4:24-cv-07877-JST

Dear Judge Kang:

The parties respectfully submit this letter brief pursuant to the Court's October 20, 2026 Order (ECF 80). Lead counsel met and conferred by videoconference on November 11, 2026; counsel were more than 100 miles apart, so an in-person meeting was not required. The discovery request at issue ("RFP 46") and Plaintiff's responses are attached as Exhibit A.

## I. Defendant's Position

Sunrun asks this Court to overrule Plaintiff's objections to RFP 46, which seeks documents concerning settlements Plaintiff received in connection with any filed or threatened TCPA claim. (Ex. A.) Plaintiff has objected to producing responsive documents on confidentiality and burden grounds. Plaintiff's objections should be overruled. Courts have permitted this discovery, including because it goes to the legitimacy of the claims and Rule 23 issues. In *Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 6:25-cv-1869 (D. Or.), the court ordered both plaintiff and his counsel to produce settlement agreements, notwithstanding contractual confidentiality provisions. *See also In re: Subpoena to the Heidarpour Law Firm, PLLC*, No. 6:26-mc-0830 (D. Or.)

**Plaintiff has responsive documents.** Plaintiff used the "Turning Robocalls Into Cash" kit's template to send "[p]robably 10 to 15" demands. (Banks Dep. 98:1–99:3.) She ultimately "sent [the demands] to Andrew [Perrong] and he took the cases that he wanted." (*Id.* 99:4–17.) Plaintiff was paid in at least four matters—QuinStreet, BioTRUST, Paramount Builders, and Strategic Consulting—all in 2025 or later. (*Id.* 122:5–127:10.) Plaintiff testified she has records related to such settlements, (*id.* 122:18–19; 123:17–21, 126:9–10), yet she has refused to produce them.

**The record to date confirms the pattern.** Plaintiff's recent production of demand letters shows that her demands sought payments totaling in the six figures. As in *Wilson*, the record shows she filed putative class actions, then dropped them in favor of substantial individual settlements, working with counsel here and others. (Banks Dep. 122:5–127:10; ECF 74-10; 74-12.) Sunrun believes opposing parties confronted Plaintiff with evidence that she completed webforms that generated the calls underlying her claims. Plaintiff has worked with Perrong since at least April 2024, before the webforms at issue here were completed, and the evidence, in Sunrun's view, shows that Plaintiff herself completed those webforms. (ECF 70-1 ¶¶ 33–35.) The same counsel who holds the fee interests at issue here also serves as counsel in *Wilson* (*Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 6:25-cv-1869 (D. Or.)), where the Court is permitting discovery into allegations of similar conduct, including whether claims were manufactured.

**The fee agreement creates an incentive favoring individual resolution.** Plaintiff's retainer agreement gives counsel the greater of one-third of any recovery or, for an individual resolution, everything above her "agreed upon permissible statutory damages," with the fee split "equally" between Perrong and Paronich. (ECF 79-1 ¶¶ 5–6.) Similar provisions were at issue in *Wilson*, where the individual settlements considered to date total approximately $6.36 million, of which counsel received approximately 95.7%, the client approximately 3.7%, and the putative class nothing. *In re: Subpoena to the Heidarpour Law Firm, PLLC*, No. 6:26-mc-0830, ECF No. 35 (D. Or. 2026) (Watstein Decl. ¶¶ 5–6.) As Judge McShane observed, settlement activity of this kind—"making a cottage industry out of this" by seeking "money from the threat of class certification, not following through with it"—bears on both the plaintiff's and her counsel's ability to satisfy the adequacy standards of Rule 23. (*Wilson* Hr'g Tr. 44:8–13, 44:16–45:2.)

**Confidentiality and privacy.** A protective order governs this case. (ECF 37.) A private, contractual confidentiality clause does not immunize relevant documents from discovery; it is addressed by designation, not withholding. *See Petricevic v. Shin*, No. 1:20-cv-00283, 2021 WL 11716408, at *4 (D. Haw. Jan. 29, 2021). Plaintiff herself testified that she has no confidentiality concerns about this lawsuit (Banks Dep. 116:15–117:3).

**Relevance and proportionality.** As Sunrun demonstrated in the prior filings, webforms bearing Plaintiff's information came from the same IP address and an IP address sharing its first seven digits minutes apart, one of which became *Banks v. QuinStreet*. (ECF 70-1 ¶¶ 33–35.) In BioTRUST and Paramount, the defendants likewise relied on consent forms in Plaintiff's name, and Plaintiff dismissed both cases. (ECF 74-10; 74-16 at 5; 74-12; 74-17.) The settlement agreements—their dates, recitals, releases, and payment terms (and any IP or e-signature metadata)—will show what the dismissals and aggregate settlement information alone cannot: whether a submission in her name was followed by calls, a template demand, referral to counsel, and a payment. (See ECF 83 at 2.) That bears on consent, who generated the leads, the TCPA's zone of interests, and typicality and adequacy. A plaintiff whose "credibility and motives in light of his litigation background" would invite a factfinder to "infer that the plaintiff was not truly an aggrieved consumer" should not represent a class. *Wuest v. My Pillow, Inc.*, No. 3:18-cv-03658, 2019 WL 3577176, at *5 (N.D. Cal. Aug. 6, 2019) (cleaned up). Plaintiff says these issues belong at class certification (ECF 83 at 4), but that is why the discovery is needed now: Sunrun cannot litigate adequacy on a record Plaintiff controls and refuses to disclose in discovery.

**Plaintiff's offered compromise is inadequate.** Plaintiff offered only aggregate recovery figure (excluding attorneys' fees and costs) and the QuinStreet agreement, and to provide IP addresses if available. An aggregate number strips out the counterparty, the timing, the release scope, and the allocation between Plaintiff and counsel—the very facts that show whether the pattern recurs. Plaintiff also has refused to produce the communications surrounding the settlements.

**Plaintiff's burden objection is unsupported.** Plaintiff claims that identifying settlement and conduct dates is too burdensome, but she has identified no volume, cost, or time estimate, and could not say how many settlements exist. By Plaintiff's own testimony there are at least four settled matters, all resolved since early 2025, three of them handled by her counsel here. (Banks Dep. 122:5–127:10; 122:25–126:4.) Any counterparty notice provisions commonly permit disclosure under a court order, and an order here resolves that. The agreements and related

communications go to Rule 23 issues—typicality and adequacy—and Sunrun should be able to test them.

**Courts permit discovery into a class representative's history.** The concerns raised in the District of Oregon illustrate why. In *Wilson*, the court has examined whether putative TCPA class actions were used to obtain individual payouts rather than to represent absent class members, and Plaintiff's counsel here is involved in those proceedings. The record there also shows that the plaintiff himself completed webforms that generated the communications underlying his TCPA claims, a circumstance similar to what Sunrun believes occurred here, yet that fact was initially denied and later admitted. That history underscores why the discovery Sunrun now seeks to compel is appropriate. A defendant may pay a substantial sum to resolve a TCPA class action rather than spend years and millions of dollars litigating whether the underlying claim had merit. Prior settlements therefore may bear directly on whether a putative class representative has repeatedly invoked the class-action mechanism to obtain individual recoveries rather than pursue relief for the class. Sunrun is entitled to test that issue. *See, e.g., Wuest*, 2019 WL 3577176, at *4–5 (settlement history appropriate to show whether plaintiff has abused the class action device); *see also Moser v. Health Ins. Innovations, Inc.*, No. 3:17-cv-01127, 2018 WL 6735710, at *16 (S.D. Cal. Dec. 21, 2018).

**Sunrun's proposed compromise.** Sunrun proposes that, for each matter responsive to RFP 46, Plaintiff produce: (1) the full, unredacted settlement agreement; (2) any available IP-address information associated with Plaintiff's execution of that agreement or other documents she signed in connection with the matter; (3) if not apparent from the settlement agreement, the amount Plaintiff received as compared with the amount received by her counsel; (4) the highest monetary demand Plaintiff made to the opposing party for an individual resolution of the matter; and (5) any IP addresses that the opposing party identified in settlement discussions as associated with a webform allegedly completed by or on behalf of Plaintiff.

## II. Plaintiff's Position

SunRun's position is long on rhetoric and short on law. It invokes a "pattern," a "cottage industry," and a different plaintiff's case in Oregon, but it never identifies a claim or defense *in this case* that the terms of Ms. Banks's unrelated settlements would make more or less probable. That is what is required under Rule 26(b)(1), which mandates that discovery be "relevant to any party's claim or defense and proportional to the needs of the case." As the party seeking to compel, SunRun bears the initial burden of showing relevance. *Jackson v. Clear Link Ins. Agency, LLC*, No. 4:22-cv-01466, 2023 WL 6436692, at *1 (M.D. Pa. Sept. 29, 2023). It has not carried it.

**Settlement terms are not relevant to any claim or defense.** Courts regularly decline to compel the details of a TCPA plaintiff's prior settlements. *Charvat v. Southard Corp.*, No. 2:18-cv-190, 2019 WL 13196991, at *3 (S.D. Ohio Feb. 13, 2019) (court "not persuaded that financial information such as the specific amounts of Plaintiff's prior TCPA settlements or awards is relevant" to the defenses); *Charvat v. Travel Servs.*, 110 F. Supp. 3d 894, 899-900 (N.D. Ill. 2015) (affirming denial of documents showing how plaintiff's other TCPA claims were resolved, holding that recoveries in other cases shed no light on class members' damages, and holding that previous settlements were not relevant to plaintiff's ability to serve as a class representative); *Quinn v. Branch Banking & Tr. Co.*, No. 5:19-cv-433, 2020 WL 264696, at *4 (M.D. Fla. Jan. 17, 2020)

(precluding inquiry into prior TCPA settlements as not relevant or proportional, while permitting inquiry into prior complaints and lawsuits). *Jackson* is particularly instructive. There, the *plaintiff* sought the *defendant's* prior TCPA settlement agreements, and the court, applying the ordinary Rule 26 standard, still denied the motion, holding that settlement agreements "are neither complaints nor records of factual findings by a court," and the plaintiff had not shown they were anything but duplicative of the prior complaints already produced. 2023 WL 6436692, at *3. The court also rejected the premise that how quickly, or for how much, a case settled reveals anything about its merits, because cases settle "for any number of reasons." *Id.* at *4.

The same is true here. SunRun says the agreements' "dates, recitals, releases, and payment terms" will show "whether a submission in her name was followed by calls, a template demand, referral to counsel, and a payment." They will not. A settlement agreement records the terms on which a dispute ended and does not recite the evidence in the underlying case. Every other piece of potentially relevant, and indeed more probative evidence, in SunRun's chain is already in its hands, including the dockets and the consent forms those defendants raised, the dismissals, Plaintiff's demand letters, and her testimony identifying each matter, her counsel, and when she was paid. That a defendant raised consent and the case later resolved proves nothing because, as *Jackson* recognized, cases resolve for many reasons. And the consent that matters here is consent to *SunRun's* calls, an affirmative defense on which SunRun bears the burden. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). SunRun has conceded that the July 11, 2024 webform "was the only form submitted to SunRun." ECF 70 at 2. Nothing in a release with some third party makes it more or less likely, let alone contains any evidence, that Ms. Banks submitted any purported consent in those cases.

**SunRun's "pattern" is not a claim or defense.** SunRun objects that an aggregate figure strips out "the very facts that show whether the pattern recurs." But SunRun never says which element of consent, standing, typicality, or adequacy turns on a counterparty's name, the scope of a release, or how a payment was divided. Repeat TCPA litigation does not make a plaintiff inadequate. *Southard*, 2019 WL 13196991, at *2; *Johansen v. One Planet Ops, Inc.*, No. 2:16-cv-00121, 2018 WL 1558263, at *4 (S.D. Ohio Mar. 5, 2018); *see Charvat*, 110 F. Supp. 3d at 898-99 (rejecting the "professional plaintiff" label as a basis for finding a representative unfit). The split between client and counsel is the kind of detail courts withhold even when they allow other settlement-related discovery. *Rowan v. Pierce*, No. 20-1648, 2022 WL 14898076, at *2 (D.P.R. Oct. 26, 2022) (denying discovery of attorneys' fees from prior TCPA claims). Plaintiff's fee agreement is already before the Court (ECF 79-1), and any question about counsel's incentives belongs under Rules 23(g) and (h) at class certification. *Wuest* was a class certification ruling, and not an order compelling settlement agreements. Nor does Plaintiff "control" the record, as SunRun has her litigation history, deposition, demand letters, and retainer.

**SunRun misstates *Wilson*.** SunRun tells the Court that in *Wilson* "the court ordered both plaintiff and his counsel to produce settlement agreements, notwithstanding contractual confidentiality provisions." That mischaracterizes the record in that case. The order SunRun relies on enforced a Rule 45 subpoena to a referral firm, and, as the filings in that proceeding reflect, it did not address the counterparties' contractual rights or direct production without notice. *In re Subpoena to Heidarpour Law Firm, PLLC*, No. 6:26-mc-00830-MC, ECF 45 at 19-20 (D. Or. Nov. 16, 2026). For each agreement that contained a confidentiality or notice provision, the counterparties received notice under a process the defendant agreed to in writing, and agreements subject to objection were

produced only after the objection was withdrawn. *Id.* The rest of SunRun's *Wilson* argument rests on hearing remarks about a different plaintiff, a different defendant, and different evidence, and on what SunRun "believes" occurred here. Remarks at a hearing in another case are not evidence about Ms. Banks, and belief is not a basis to compel.

**SunRun's own cases do not support what it seeks.** In *Moser*, the court required the plaintiff to identify prior settled claims, the amounts, and the payors, 2018 WL 6735710, at *14, *19, and required the confidential agreements themselves to be submitted for *in camera* inspection so the court could determine what notice and protection the non-party counterparties were owed before any disclosure. *Rowan* compelled interrogatory answers and income information, but not settlement agreements. 2022 WL 14898076, at *2. SunRun asks for far more, including full, unredacted agreements, which reflect who paid and was paid what, the relevant split, Plaintiff's opening demands, and what opposing parties said in negotiations.

**Confidentiality and Rule 408 weigh against production.** Several of the agreements contain negotiated confidentiality provisions that require notice to the counterparty before disclosure, as the *Wilson* agreements did. Those non-parties bargained for confidentiality, have not been heard, and have not waived their rights. The protective order does not alleviate those concerns because the parties have negotiated specific provisions. What's more, the presence of a protective order does not independently make irrelevant documents relevant. This consideration weighs in the proportionality balance where probative value is low, as here. *Southard*, 2019 WL 13196991, at *3; *Homeland Ins. Co. of N.Y. v. Health Care Serv. Corp.*, 330 F.R.D. 180, 182-83 (N.D. Ill. 2019) (speculative relevance does not justify overriding settling parties' bargained-for confidentiality). The burden associated with these provisions is the burden the Plaintiff has identified, which consists of not only notice to but also disputes with counterparties over agreements of negligible probative value. The policy underlying Rule 408 has also led courts "to adopt a more demanding standard than Rule 26(b)(1) when it comes to discovery of settlement agreements." *Spear v. Fenkell*, No. 13-02391, 2015 WL 3947559, at *1 (E.D. Pa. June 26, 2015). The Court need not go even that far, because SunRun fails even the ordinary standard. *Jackson*, 2023 WL 6436692, at *3.

SunRun's demand for the "communications surrounding the settlements" reach the negotiations themselves and attorney-client communications, which are further still from any issue here. *See White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368-69 (N.D. Ill. 2001) (allowing discovery of a settlement agreement but not the negotiations, which "have no probative value"). And Plaintiff's communications with her counsel about those matters are privileged.

**Plaintiff's proposed compromise.** Plaintiff offered to produce: (1) the IP address and audit log data associated with her execution of each settlement agreement, so SunRun can compare it against the IP addresses on the webforms it relies on (the same information as SunRun's item (2)); (2) the QuinStreet agreement (after appropriate notification), because QuinStreet is the one matter SunRun ties to its alleged consent theory here, through the July 15, 2024 submission; and (3) the aggregate amount of Ms. Banks's TCPA settlement recoveries. That gives SunRun everything with any conceivable bearing on consent, typicality, or adequacy, while leaving in place the confidentiality terms that non-parties bargained for, and it is the kind of narrower disclosure courts have ordered. *Southard*, 2019 WL 13196991, at *3. The Court should sustain Plaintiff's objections beyond that compromise. If the Court is inclined to go further, it should follow *Moser* and review the agreements in camera, with notice to the counterparties, before ordering any production.

Dated: November 18, 2026

*/s/ Andrew Perrong*
Andrew Perrong (*pro hac vice*)
PERRONG LAW LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
Tel: (215) 225-5529
Fax: (617) 830-0327
a@perronglaw.com

Dana J. Oliver (SBN #291082)
OLIVER LAW CENTER, INC.
8780 19th Street, #559
Rancho Cucamonga, CA 91701
Tel: (855) 384-3262
Fax: (888) 570-2021

*Attorneys for Plaintiff Peggy Banks*

Respectfully submitted,

*/s/ Glenn T. Graham*
Glenn T. Graham (SBN #338995)
KELLEY DRYE & WARREN LLP
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Tel: (973) 503-5900
Fax: (973) 503-5950
ggraham@kelleydrye.com

*Attorneys for Defendant Sunrun Inc.*

## **ATTESTATION**

I, Glenn T. Graham, am the ECF user whose information and password are being used to file this document. I hereby attest that all other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

November 18, 2026

*/s/ Glenn T. Graham*
Glenn T. Graham